PARKER-GORDON IMPORTING COMPANY, Appellee, v. JOHN
BENAKIS, Appellant.

No. 40779.

OCTOBER 27, 1931.

Maxwell & Ryan, for appellee.

Henry P. Daly, for appellant.

GRIMM, J.—On the 10th day of January, 1930, plaintiff filed
in the Municipal Court of Des Moines, Polk County, Iowa, its
verified petition seeking judgment in the amount of $125.00 as
the balance due upon a bill of goods claimed to have been sold
by the plaintiff to the defendant on the 7th day of February,
1929.

According to the statement of account, Exhibit "A," attached to the petition, there were sold thirty-four articles consisting of wrist watches, billfolds, pipes, clocks, pearl knives, etc., the total price of the goods being $150.00, on which there appears to have been paid the sum of $25.00. There was printed across the bill the following language:

"These goods are not sold on consignment and are not returnable for credit later than ten days after date of shipment."

On the 22nd day of April, 1930, the defendant filed an amended and substituted answer in which there is contained, among other things, the following.

A general denial, except as expressly admitted. Defendant admits the execution of the contract for the purchase of the merchandise as set out in said Exhibit "A." The defendant then pleads that at the time the contract was entered into, being of Greek nationality, he was unfamiliar with the laws of the State of Iowa and particularly that portion thereof which pertained to gambling devices, gambling and lotteries.

It is alleged that the merchandise represented by Exhibit "A" was sold by the plaintiff and purchased by the defendant in order that the defendant might give the same as prizes in connection with the operation of punch boards. The defendant then pleads the enactment of Chapter 262, Laws of the 43rd General Assembly of the State of Iowa, which in general terms made the use of punch boards unlawful and the possession thereof unlawful.

The defendant claims he tendered to the plaintiff the merchandise in question after passage of the said Acts of the 43rd General Assembly and that the tender is kept good. The defendant then asks judgment for the $25.00 paid to the plaintiff.

On the 23rd day of April, 1930, a stipulation was filed, as follows:

"It is hereby stipulated by and between the parties hereto, that the defendant purchased from the plaintiff the merchandise set out in Exhibit 'A' of plaintiff's petition for the sum of $150.00; that thereafter the defendant paid this plaintiff $25.00 on account; that the merchandise set out in Exhibit 'A' was to be used as prizes on a punch-board, which said punch-board was

delivered to the defendant with the merchandise set out in Exhibit 'A' by the plaintiff.

"It is further stipulated that with reference to the tender of merchandise in the defendant's answer, that the only merchandise now in the possession of the defendant is one Pearl House Clock of the value of $25.00. And it is further stipulated that the defendant requested the representative of the plaintiff to call for said merchandise set out in Exhibit 'A,' but plaintiff's representative failed and neglected to do so."

The court on the 12th day of May, 1930, found for the plaintiff and against the defendant in the sum of $125.00 with interest from the date of the judgment.

■ I. The defendant on the 10th day of December, 1930, attempted to add to the record by an affidavit of defendant's counsel. Manifestly, the record cannot be so amended and the affidavit will not be considered.

■ II. Section 13198 of the Code of 1931 is as follows:

"13198. Keeping gambling houses. If any person keep a house, shop, or place resorted to for the purpose of gambling, or permit or suffer any person in any house, shop, or other place under his control or care to play at cards, dice, faro, roulette, equality, *punch board* or other game for money or other thing, such offender shall be fined in a sum not less than fifty nor more than three hundred dollars, or be imprisoned in the county jail not exceeding one year, or both." (Writer's italics.)

Section 13210 of the Code of 1931 is as follows:

"13210. Possession of gambling devices prohibited. No one shall, in any manner or for any purpose whatever, except under proceeding to destroy the same, have, keep, or hold in possession or control any roulette wheel, klondyke table, poker table, *punch board,* faro, or keno layouts." (Writer's italics.)

The italicized parts of both Sections 13198 and 13210 were supplied by Chapter 262 of the Acts of the 43rd General Assembly. At the time this contract was entered into, the words "punch boards" were not contained in Section 13198 or in Section 13210 of the Code.

It will be noted that the stipulation hereinbefore quoted,

which constitutes the entire record on the facts, does not furnish any date of the delivery of the goods. It is the contention of the appellant that the delivery was after Chapter 262 of the Acts of the 43rd General Assembly became effective and that thereby the plaintiff cannot recover.

As we view the case, it is unnecessary to enter into that branch of the case.

Section 13202 of the Code of 1927 is as follows:

"Gaming and betting defined. If any person play at any game for any sum of money or other property of any value, or make any bet or wager for money or other property of value, he shall be guilty of a misdemeanor."

This court said in State v. Miller, 53 Iowa 154:

"As to whether the game is one of skill or chance seems to be immaterial. The statute provides that to 'play at any game for any sum of money or other property of any value,' is gambling. Code, Sec. 4028."

Said Section 4028, as it appeared in the Code of 1873, read as follows:

"If any person play at any game for any sum of money or other property of any value, or make any bet or wager for money or other property of value, he shall be punished by fine not exceeding one hundred dollars, or by imprisonment in the county jail not exceeding thirty days."

This court, in State v. Ellis, 200 Iowa 1228, had before it for consideration a certain form of nickel-in-the-slot vending machine, described as follows:

"The machine in question purported to be used for the sale of mints in packages. These packages were retailed at five cents each, through the use of the machine. It is a slot machine. The nickel goes into the slot, and the purchaser pulls a lever, whereby the mint package is delivered into the hand of the purchaser. This result is invariable. In addition to the package of mints, 'chips' are sometimes delivered also. These 'chips' are metal discs, which are stamped as being 'good for five cents in trade.' These 'chips' furnish the allurement of the game. In order to

avoid the appearance of chance in the game, an indicator is provided with this machine, which indicates to the purchaser in advance just what he will receive by a pull of the lever and a deposit of a nickel. At the first play of the lever, the purchaser is usually advised by the indicator that he will receive nothing but a package of mints. The first pull of the lever sets the indicator, however, for the next play. It may indicate that for the second pull of the lever the purchaser will receive a specified number of 'chips' in addition to the mint package; or it may indicate that only a package of mints will be received. It is a question of chance at this point. If the indicator fails to promise 'chips' for the second pull, such promise may be there when it is set for the third pull. The promise is sure to come if the lever is pulled and the nickel dropped a few times successively.''

The court said:

''This is perhaps a sufficient description and indication of the lure that is hidden in the operation of this device. The player pulls the lever, not simply for the package of mints promised him by the indicator, but for his supposed option on the next pull, if the set of the indicator promises a prize. As said by the Supreme Court of Indiana, in describing a similar machine in Ferguson v. State of Indiana, 178 Ind. 568: 'The inducement for each play was a chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the vice to which Section 2474, supra, is directed.' * * * Machines of this character have been considered by the courts of last resort of many of our states. Without exception, they have been held to be gambling devices. The brief for the State cites decisions to that effect from the Supreme Courts of twenty-two states. It does not appear that any court of last resort has ever held otherwise.''

In State ex rel. Manchester v. Marvin, 211 Iowa 462, this court had under consideration another form of slot vending machine, described as follows:

'' 'The machine in question is operated as a mint-vending

machine, and upon the deposit of a nickel, uniformly releases one package of mints. If the compartment is empty, the slot receiving the money automatically returns same to the depositor. These facts are conceded in this case, and the only proposition upon which it is claimed this machine is a gambling device is that it occasionally releases certain brass discs or tokens, which are stamped on one side, 'good for amusement only,' and on the other side, 'no cash value,' which remain the property of the vendor, and which can be used to replay the machine for the customer's sole amusement. Nothing of value and no merchandise is ever vended with the token. The only function it serves is to operate a reel upon which fortunes and funny sayings appear, which can be read for the customer's amusement. It is further conceded that the vending machine was sold to be used as above indicated, and that no tokens or discs were ever exchanged for any cash or anything of value.' * * * The contention of the appellant is that the extra discs that are occasionally cast into the hand of the operating patron have no value, and that they are so stamped, and that, therefore, they cannot be used as a gambling device. The stamping of the discs had no effect upon their character or upon their purpose. If it were conceded that the disc had no value, yet the nickel which it induced from the patron did have value. The use of the discs had a manifest purpose. Such purpose was to stimulate the expectation of the buying patron that he might receive something more than a package of mints. The only apparent economic reason for their use was that they would induce a larger deposit of nickels in the slot than would otherwise ensue. Among the patrons of the machine, some, if not many of them, might prefer the feature of amusement rather than the package of mints. If these discs were made 'good' for admission to a movie or other place of amusement, their character as a gambling device would be readily recognized. Something akin thereto was their actual function as used. The 'movie' was furnished instanter in response to the call of the disc. It must be held, therefore, that the machine in question was a gambling device within the meaning of the statute.''

Many other cases might be cited from this and other jurisdictions, defining what constitutes gambling devices. They il-

lustrate the manner in which the use of these devices constitutes gambling. The word "punch board" has become a well-known term in common use and recognized in the law. The Legislature of the State of Iowa, by Chapter 262 of the Acts of the 43rd General Assembly, placed the word "punch board" without definition or description in Sections 13198 and 13210 of the Code of 1927.

■ The parties to this contract, by their agreed statement of facts, recognized the general use of the term and must be held to concede that it has a recognized, definite meaning.

In Commonwealth v. Gritten, 202 S. W. (Ky.) 884, is found the following description of a punch board:

"The punch board consists of a square board containing numerous holes and a great many numbers. On punching one of the holes a number would appear. On a rack near by are numerous articles, consisting of knives, rings, watches, etc., worth from 50 cents to $5 each, and numbered to correspond with the numbers on the board. The player purchases a post card for 5 or 10 cents and is then entitled to a punch. He then punches one of the holes, and if there appear a number corresponding to the number of any of the articles of merchandise he is entitled to that article; otherwise, he receives nothing in addition to the post card. It will thus be seen that the punch board is similar in principle to the slot machine. The lure of the board consists in the element of chance by which the player may receive something for nothing." ·

See also State v. Turlington, 204 S. W. 821 (Mo.)

In Grove Manufacturing Co. v. Jacobs, 103 Atlantic 14 (Me.), the plaintiff brought suit against the defendant for an assortment of goods to be distributed in connection with a punch board. The agreed statement of facts in that case is as follows:

"The assortment described in plaintiff's writ consisted of a board containing seven hundred holes in each of which was a slip of paper with a number printed thereon. The board was covered with a paper upon which were spots indicating where each hole was located. A list of premiums, so called, was printed on the paper cover. The collar buttons did not exceed in ·retail value the sum of five cents, and the premiums, consisting

of seventy articles, varied in value from fifty cents to two dollars, except the one designated as 'last punch,' which was in this case a meerschaum pipe of the retail value of about five dollars. Upon the purchase of a collar button for ten cents, a person was entitled to the further right to punch out the slip of paper in any hole which he might choose. If the number upon the slip of paper in the hole punched by him, corresponded with the number placed opposite any premium described on said board, such premium became the property of such person. That the intention of the plaintiff was that the said assortment should be used according to the specifications of said board.''

At that time, there was a statute in that state (Rev. Stat. of Me., 1916, Ch. 103, Sec. 18), the material parts of which are as follows:

"Every lottery * * * scheme or device of chance, of whatever name or description * * * is prohibited.''

The statute further provided that any one concerned directly or indirectly in operating such a device should be punished as provided by the statute. The court held that under said statutes and the decisions of the State of Maine, the device hereinbefore described came fully within the ban of the statute as a gambling device.

The Legislature of this state, by incorporating the word "punch board" into Section 13198 and 13210 hereinbefore quoted, recognized a punch board as a gambling device.

It clearly appears from the agreed statement of facts that the plaintiff in this case knew what use the defendant was about to make of the merchandise in question. True the merchandise might be used for a legitimate purpose, but the plaintiff agrees "that the merchandise set out in Exhibit 'A' was to be used as prizes on a punch board which said punch board was delivered to the defendant with the merchandise set out in Exhibit 'A' by the plaintiff.''

Manifestly, an attempt was made to evade the provisions of statutes prohibiting gambling by giving the punch board instead of including it as a part of the sold merchandise. Nevertheless, it is apparent that the plaintiff knew that the punch board and the sold merchandise in reality constituted one de-

144

livery of goods for a specific purpose, to wit, gambling by the use of a punch board.

The rule has been stated as follows:

"It is held in England and Canada that where the agreement is innocent in itself but the intention of one of the parties is unlawful, as where goods are bought or money borrowed to be used for an unlawful purpose, the mere fact that the other party knows of such purpose renders the agreement illegal and void." 13 C. J. 517.

Ten of the states of the Union, including Iowa, have followed the English rule. See J. M. Brunswick & Balke Co. v. Valleau, 50 Iowa 120. In the foregoing case, this court said:

"In our opinion the law is that where an article has a lawful use, and has no unlawful use except as a mere incident to the lawful use, the vendor is not bound to presume that it will be used unlawfully, and will not, therefore, be deemed to have knowledge that it will be. Knowledge of the unlawful intention must be distinctly shown."

. See also 53 A. L. R., page 1373, for a collection of cases and authorities.

Under these circumstances, the plaintiff cannot recover and the cause must be, and is, Reversed.

FAVILLE, C. J., and EVANS, MORLING and KINDIG, JJ., concur.