JASPER, Appellant, v. ROSSMAN et al., Respondents

(41 N. W.2d 310)

(File No. 9047. Opinion filed February 15, 1950)

**Henry C. Mundt,** Sioux Falls, attorney for Plaintiff and Appellant.

**Doyle & Mahoney,** Sioux Falls, attorneys for Defendants and Respondents.

ROBERTS, J.  Plaintiff brought this action to recover the balance alleged to be due for certain merchandise sold and delivered to the defendant.  The answer set up the defense that the articles purchased were gambling devices and that the purchase being void as against public policy there was no valid consideration for the promise to pay.  The case came on for trial by jury.  At the close of the evidence, both parties moved for a directed verdict and did not reserve the right to go to the jury on any question of fact. The court then discharged the jury and made findings and conclusions of law in favor of defendant.  Plaintiff brought the case here on appeal from the judgment.

The court found that plaintiff, doing business under the name of Specialty Sales Company in Minneapolis, Minnesota, sold to the defendants certain merchandise consisting of punch boards, Dormeyer mixers, and novelties known as dresser sets, musical sleighs and musical fire places; that the value of the mixers was the sum of $388.50; that

the agreed price of the punch boards was $370.62; that the novelties mentioned were returned to and retained by the plaintiff; and that prior to the commencement of this action payments were made in the amount of $432.47, which was more than sufficient to pay the agreed purchase price of the mixers.

Plaintiff testified that the articles in question had been sold by him to defendants and that the balance of $315.40 was due and unpaid. Concerning the make-up and the manner of the use of the punch boards, he testified on cross-examination as follows:

"Q. Now, Mr. Jasper, you allege here in your bill of particulars that you sold to the defendant eight 2,000 Big Threes, and fifteen Tri-Prizes and one Cartwheel, on October 16, 1946. What are those articles? A. Those are titles of punch boards. Big Three is the title of a board that contains three big prizes. There are three spots on the board, number—different numbers—100, 200, 300, etc., and the space is blank and the wholesaler can put in these spaces whatever prizes he wants to award them.

"Q. And all of these boards, whether they are designated Big Three, Tri-Prize, or Cartwheels, are punch boards? A. That is right.

"Q. You also allege that on the 5th of November, 1946, you sold Grand Prizes, Specialty Prizes, Hits, Big Threes. Are those, likewise, punch boards? A. Yes, Sir.

"Q. And they are just particular trade names that are given to the common, ordinary punch board. A. That is right.

"Q. Then on November 18, 1946, you allege you sold Hot Fins, Hot Deuces, and Dozen Hits. Are they likewise punch boards? A. They are punch boards.

"Q. Those names are just mere trade names that are given to the common article of punch boards. A. That is the names of those boards, and that happens to be a board that pays out in either cash or merchandise. I forget. But that is also a punch board.

"Q. Which is it that pays out in cash? A. I think they both pay out in cash.

"Q. Both the Hot Fin and Hot Deuce pay out in cash? A. I think so

"Q. What about the Dozen Hits? Does that pay in cash? A. That Dozen Hits is a trade name, signifying 12 prizes.

"Q. And are any of those prizes cash? A. Sometimes there is cash on the board.

"Q. And they can be used for giving away cash? A. Surely.

"Q. Now, on November 27th you allege you sold Two Big Pots, and are those trade names or a special name given to a certain type of punch board? A. Yes.

"Q. But the article itself is the usual— A. Punch board.

"Q. Now, you knew, of course, Mr. Jasper, that these boards would have no value to any one, unless they could use them, put them out for gambling purposes, didn't you? A. I assumed that.

"Q. So your only claim here, now, is for the Hot Fins and the Hot Deuces and the Specialty Prizes and Grand Prizes and other punch boards. That is true, isn't it? A. Yes, that is true."

No material conflict in the evidence exists. Manifestly, it cannot be said that the evidence preponderates against the findings of the trial court. The question to be determined is whether there is basis in the record for denial of recovery because use of these punch boards would be contrary to law and against public policy.

Section 25, Article III of the State Constitution, provides: "The legislature shall not authorize any game of chance, lottery or gift enterprise, under any pretense, or for any purpose whatever."

The legislature has undertaken to define the term "lottery". As defined by the provisions of SDC 24.0201, a lottery is "any scheme for the disposal or distribution of property by chance, directly or indirectly, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property, or a portion of it, or for any share of, or interest in such property, upon any agreement, understanding, or expectation that it is to be distributed or disposed of by lot or chance, whether called a lottery, a raffle, a gift enterprise, or by whatever name the same may be known."

That section also declares that "Every lottery is unlawful and a public nuisance." SDC 24.9906 and 24.9907 make it an offense to maintain and carry on lotteries and thereunder "all property offered for sale or distribution in violation of the statutes relating to lotteries is forfeited to the people of this state as well as before as after the determination of the chance on which the same are dependent."

It is asserted that defendant did not purchase the articles in question for the purpose of using them, but for resale, and that it follows that without participation or interest in an illegal act the validity of the sale and the right to recover the price of the punch boards were not affected.

In the case of Ferguson v. Yunt, 13 S.D. 120, 82 N.W. 509, 510, this court said: "Courts do not lend their aid to parties engaged in transactions in violation of law, and betting and gambling contracts are uniformly held to be contrary to the policy of the law, and illegal." "The test to determine whether the plaintiff is entitled to recover", said the court in that case, "is his ability to establish his case without any aid from the illegal transaction. If his claim or right to recover depends upon a transaction which is malum in se, or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery." The general rule that the law will not aid either party has been applied to illegal transactions other than gambling. E. P. Wilbur Trust Co. v. Fahrendorf, 64 S.D. 124, 265 N.W. 1; Bartron v. Codington County, 68 S.D. 309, 2 N.W.2d 337, 140 A.L.R. 550; Beverage Co. v. Villa Marie Co., 69 S.D. 627, 13 N.W.2d 670. The defense of illegality prevails, not as a protection to the defendant, but as a disability in plaintiff. The reasons for refusing the aid of the court become even stronger when the property is liable to proceedings by the state to enforce a forfeiture.

There have been many decisions to the effect that, where the sale is of an article that may or may not be used for an illegal purpose, it is no defense to an action to recover the price that the seller knew of the purpose of the buyer to devote it to the commission of a minor offense, without some further evidence implicating the seller. See 53 A.L.R.

1373 and 166 A.L.R. 1362. Thus, in Rose v. Mitchell, 6 Colo. 102, 45 Am.Rep. 520, the court observed: "To say that a bare knowledge that the article sold was capable of unlawful use, and that it probably would be put to such use by some remote vendee, is sufficient to vitiate a sale, would be a conclusion too far fetched for legal consideration, applicable to the law of contracts. Such a rule would operate to vitiate sales of ordinary playing cards, billard tables, race horses, and many other articles and kinds of property of legitimate trade, which are capable of being made the means of gambling, contrary to statute. Such a rule would impose an unreasonable restraint upon commerce and trade." Accordingly, it was held in J. M. Brunswick & Balke Co. v. Valleau, 50 Iowa 120, 32 Am.Rep. 119, that the plaintiff who sold to the defendant a billard table could recover the price notwithstanding his knowledge at the time of the sale that the table was to be used in a saloon where, as it appeared from the evidence, gambling was almost universally carried on in connection with billiard tables.

The case before us rests upon different facts than those in the cases referred to and others cited by appellant. Hatton v. Casey, 93 Ind.App. 336, 178 N.E. 303, is an analogous case. The seller of punch boards brought the action to recover their price. The court held that the only practical use to which these articles could be put was to conduct a game of chance and that the seller could not recover. See also Brewer v. Woodham, 15 Ala.App. 678, 74 So. 763; Parker-Gordon Importing Co. v. Benakis, 213 Iowa 136, 238 N.W. 611; Advance Whip & Novelty Co. v. Benevolent Protective Order of Elks, 106 Vt. 72, 170 A. 95; George v. Wm. C. Johnson Candy Co., 19 Ohio App. 137. True, the sale of punch boards in this state is not expressly prohibited, but their use for selling of chances to win money or prizes is unlawful. The ordinary use, if not the only use of the punch boards sold by plaintiff was for gaming or lottery purposes and for these reasons plaintiff cannot maintain this action.

The judgment appealed from is affirmed.

All the Judges concur.