**STATE of South Dakota,**
**Plaintiff-Appellee,**

v.

**Barry E. BAYER, Defendant-Appellant.**

**No. 14894.**

Supreme Court of South Dakota.

Argued Sept. 11, 1985.

Decided Nov. 20, 1985.

John Dewell, Asst. Atty. Gen., Pierre, S.D., for plaintiff-appellee; Mark V. Meierhenry, Atty. Gen., Pierre, S.D., on brief.

Thomas K. Wilka of Hagen & Wilka, for defendant-appellant; Karen E. Schreier, Sioux Falls, S.D., on brief.

FOSHEIM, Chief Justice

The circuit court reversed the magistrate's order to the South Dakota Department of Revenue (Revenue) to refund monies paid by Barry Bayer (Bayer) under terms of a plea agreement. Bayer appeals. We affirm.

In 1981 Bayer was charged with three felony violations of SDCL 10–45–49.1 for his failure to file sales and service tax returns related to his book-making busi-

ness. Under a plea bargain, he pleaded guilty to two counts of failure to secure and hold a sales tax permit in violation of SDCL 10–45–48. Bayer was sentenced in magistrate court to ten days in the county jail; ordered to pay $62,500.00 for back taxes, penalties, and interest for the period July 1, 1979, through April 1, 1981; and given probation under the conditions that he pay the agreed sum, adopt appropriate sales tax records, and have no violations of SDCL ch. 10–45 nor commit any felonies.

Five days of the sentence were suspended. The schedule for payment of the taxes, penalties, and interest was amended. Bayer has paid $46,407.56 of the $62,500.00 to the South Dakota Department of Revenue (Revenue).

Following this court's decision in *Bayer v. Johnson*, 349 N.W.2d 447 (S.D.1984) (Bayer I), the magistrate vacated the conviction on August 13, 1984. In Bayer I, we held that sales tax licensing requirements under SDCL ch. 10–45 could not constitutionally be applied to prohibited gambling activities.

Following the vacation of the judgment, Bayer moved the magistrate court for a refund of the sums he paid under the plea agreement. The magistrate concluded that it had jurisdiction over the subject matter, that Revenue did not have jurisdiction to hear the claim, and that Bayer was entitled to a refund because the money was impermissibly collected by Revenue. The magistrate ordered Revenue to pay Bayer $46,407.56 plus interest at 15% from the date of the order.

The circuit court in reversing the magistrates order found that Bayer made no payments under protest of illegality; he continued to violate the state constitution with his gambling venture, and, accordingly, has waived his right to protest the voluntary plea agreement. The judge found that Bayer had "purchased the right to continue an unconstitutional [profitable] business" and so could not now "blandly demand his purchase price back from the law and [constitution]-abiding taxpayer." Finally, the circuit court further ruled that the magistrate had neither duty nor right to order that Bayer be made whole.

The central issue presented on appeal is whether the magistrate had jurisdiction to order Revenue to repay Bayer money paid under terms of the plea agreement. We affirm the circuit court but on a different rationale. *See Owens v. City of Beresford*, 87 S.D. 8, 201 N.W.2d 890 (1972).

 The money paid by Bayer to Revenue was either taxes, penalty and interest or it was paid as a fine. It had to be fish or fowl. If paid as a fine, it far exceeded magistrate court jurisdiction. SDCL 16–12A–6. It obviously was never contemplated as resembling a fine headed for the public school funds. *See* S.D. Const. art VIII, § 3; SDCL 23A–27–25. The sentence clearly denominates the money as taxes, penalty and interest. At no time were these sums considered fines or costs which arguably could be returned to Bayer pursuant to *State v. Piekkola*, 90 S.D. 335, 241 N.W.2d 563 (1976). It was pure and simply regarded as unpaid sales taxes. Though SDCL 23A–31–1 retains jurisdiction for the magistrate court to correct an illegal sentence, it does not authorize refund of the monies paid pursuant to Bayer's plea agreement. Our legislature has provided an exclusive means for recovery of sales taxes paid and requires that jurisdiction is absent if the procedure established is not strictly followed. *See* SDCL 10–55–1, through –8 (effective through June 29, 1982) and 10–55A–1, through –11.

If we look closely at the agreed terms of the plea and appropriate disposition signed by counsel for both State and Bayer, we find that Bayer agreed to pay the taxes, penalties, and interest for the period July 1, 1979, through April 1, 1981. These sums were to be remitted directly to Revenue. Finally, payment for that time period, in addition to continued compliance with South Dakota Sales Tax Laws, SDCL ch. 10–45, and adoption of appropriate sales tax records, were agreed terms of Bayer's probation. No appeal was taken from the magistrate's disposition.

We affirm.

MORGAN, J., and WUEST and HERTZ, Acting JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

## UNCONSTITUTIONAL CONVICTION CANNOT BEGET CONSTITUTIONAL TAX MONEY

A physiognomic appraisal of the majority opinion reveals a tidbit of facial worth, but its external aspect obscures its weak inner character or quality which is premised upon a "let's keep the money for state government" philosophy. This decision condones the retention of money by the sovereign under an unconstitutional conviction. In any man's book, that is bad government. *See United States v. United States Coin & Currency*, 393 F.2d 499 (7th Cir.1968), *aff'd*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), wherein said Circuit Court of Appeals, obviously affirmed by the United States Supreme Court, held that money ordered forfeited because used in violation of federal tax statutes, be returned to the defendant whose conviction for violation of the tax statutes (engaged in wagering business) could not stand because of violations of the Fifth Amendment. If the majority opinion wishes to rationalize that the above-referenced authority is not applicable because of a difference in federal and state law, the same rationale, by analogy, still applies; the sovereign should not be permitted to retain money stemming from a conviction which has been determined to be unconstitutional. Although this Court has set aside an unconstitutional conviction, this Court is still permitting a forfeiture. Where, in the majority opinion, are state statutes cited which permit and allow the forfeiture of this money? It is wrong that a branch of government would indulge in upholding an unconstitutional system of criminal procedure. As the defendant's conviction has been swept aside, in toto, so far as the law in this state is concerned, he is innocent. A conviction under an unconstitutional statute is a nullity. *State v. Piekkola*, 90 S.D. 335, 340, 241 N.W.2d 563, 565 (1976); *State v. Dove*, 75 S.D. 460, 464, 67 N.W.2d 917, 919 (1955).

I wish to conclude this section by quoting Chief Judge Blumenfeld, as did Justice Winans in *State v. Piekkola*, 241 N.W.2d at 565, as follows:

"There is little doubt that equity compels the decision reached in this case. 'While there are no means available to compensate a person who has been imprisoned for violating a statute that is subsequently found constitutionally void and retrospectively applied, there is always a means for such a person to recoup his losses when the loss takes the form of a monetary fine. The Fifth Amendment prohibition against the taking of one's property without due process of law *demands no less than the full restitution of a fine that was levied pursuant to a conviction based on an unconstitutional law.* Fairness and equity compel this result, and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith at the time of prosecution.' *United States v. Lewis, supra,* 342 F.Supp. [833] at 836." *United States v. Summa,* 1972, 362 F.Supp. 1177 (D.Conn.) (Emphasis supplied mine.)

The State of South Dakota proceeded personally against Barry E. Bayer; the State of South Dakota never proceeded against the money in rem; the State of South Dakota has shifted its position, and so has this Court, since the original criminal proceeding and this Court's pronouncement in *Bayer v. Johnson*, 349 N.W.2d 447 (S.D.1984).

## LAW OF THE CASE VIOLATED

In *Bayer, id.* at 450, we held:

In 1970 the people of South Dakota amended Article III, Section 25 of our constitution by adding a proviso authorizing games of chance by public-spirited organizations. If it be the will of the people to license, *tax* and thus authorize privately operated games of chance, that likewise requires further amendment. It

cannot be done by the legislature. (Emphasis supplied.)

Let it be remembered that in *Bayer*, the appeal was taken from a decision of the Secretary of Revenue which denied a book-maker's *application for refund of sales tax paid under protest*. This Court held that the State Legislature could not tax privately operated games of chance. Therefore, under the law of the case doctrine, and upon that theory alone, the majority opinion has bad physiognomy (fair by external aspect but weak by inner character or quality in reasoning). Therefore, it is most obvious that the subject in *Bayer* was the refund of sales tax paid under protest. The message of *Bayer* is clear: A citizen, not subject to sales tax laws, cannot be charged or convicted of not obtaining a sales tax license. The judgment, under *Bayer* and Article VI, § 18, is void as a matter of law.

## STATE SHOULD NOT BE PERMITTED TO RENEGE ON ITS PLEA BARGAIN

South Dakota and defendant Barry E. Bayer, entered into a Plea Agreement, wherein and whereby three counts of a violation of SDCL 10–45–49.1 were dismissed with prejudice. Defendant Bayer agreed to plead guilty to two counts of failure to secure and hold a sales tax permit in violation of SDCL 10–45–48. The magistrate division of the circuit court of the Second Judicial Circuit entered a judgment of conviction on July 13, 1981. Pursuant to the terms of the plea bargain and judgment of conviction, defendant Bayer remitted to the Secretary of Revenue of the State of South Dakota $46,407.56. Based upon this Court's holding in *Bayer v. Johnson*, 349 N.W.2d 447, that the judgment of conviction was void ab initio, the said magistrate division vacated and dismissed the judgment of conviction on August 13, 1984, pursuant to the mandate of the highest Court of this state. Additionally, the court had the inherent power to correct its judgment. The magistrate court corrected the judgment it wrongfully entered. The retroactive application of *Bayer*, by the magistrate court, in decreeing a return of the

money is supported by the highest authority in the land. *See United States v. United States Coin & Currency*, 401 U.S. at 724, 91 S.Ct. at 1046, 28 L.Ed.2d at 440–41. The magistrate court did its duty.

The State of South Dakota now seeks to keep the money under a void conviction, in its treasury, and refuses to abide by the lawful order of the very court in which it participated in a plea bargain. South Dakota has the legal audacity to renege on its plea bargain and to keep "unconstitutional money." Apparently, the last paragraph of *Bayer, id.*, which I cited above, is meaningless. Furthermore, this type of inverted reasoning flies in the face of *State v. Piekkola*, 241 N.W.2d 563. All payments of money to be made by the said Barry E. Bayer, defendant, were made pursuant to a void judgment which had incorporated a written plea agreement. The payment of money under the judgment was subsequently subject to motions and hearings in which the State of South Dakota took part. South Dakota was deeply involved in compromising, bargaining, and securing money on an unconstitutional conviction. These were hearings in the form of a "reduction in sentence" and the State of South Dakota, pursuant to these hearings on a "reduction in sentence," received money under the void judgment.

There can be no doubt that the judgment herein was a sentencing and criminal judgment which sentenced the defendant, Barry E. Bayer, to imprisonment in the county jail of Minnehaha County, at Sioux Falls, South Dakota, for a period of ten days. Five days Bayer served in jail—those cannot be returned, but the money exacted can be returned to him. It was either go to jail for Barry E. Bayer or pay an original assessment of $62,500 to the South Dakota Secretary of Revenue.

The judgment provided for a ten-day jail sentence, and to pay taxes, penalty, and interest from July 1, 1979 to April 1, 1981, of $62,500 in two equal installments; the first installment to be paid by July 31, 1981, and the second installment within 90 days of court approval. Five days of the

jail term were suspended and the jail term was to be served if Bayer did not pay the taxes as agreed. Probation conditions included that all payments be made unto the South Dakota Secretary of Revenue and that Bayer have no like offenses. Wrapped together were the plea bargain, the tax assessment, the jail sentence, the probation conditions, and subsequent hearings and motions because Bayer could not produce the lump sum amount. Pursuant to the criminal judgment, and pursuant to the criminal plea bargain, defendant paid $46,407.56 and the State of South Dakota accepted the money. South Dakota exacted "tribute" upon the premise that Bayer was a retailer. *See* SDCL 10–45–22. Refunds of sales tax money may only be claimed by the retailer and not by the individual customer. *Van Emmerik v. State,* 298 N.W.2d 804 (S.D.1980). It was by this latter statute and South Dakota precedent that South Dakota sought to impose, and did impose, these taxes and infused them with a criminal conviction. Now, the State contends in its brief that Bayer is not the proper party to collect the money he paid. But, rather, inferentially, the bettors are the proper parties. The bettors will never come forth and South Dakota knows it and that is why this weak and corrupt argument is used. This was entirely a criminal proceeding below, not a civil proceeding, and the criminal judgment below has been held to be totally void. Thus, everything that grows out of it is void. This Court took a lofty stance and sua sponte examined a patent constitutional dilemma in *Bayer,* 349 N.W.2d 447. We could not tolerate, we said, the licensing and the collection of a retail service tax on bookmaking activities. Now, we bless the very thing that we so loftily denounced in *Bayer.* If it was wrong in *Bayer* for the State of South Dakota to tax and receive money for licensing bookmaking activities, it is wrong for South Dakota to keep the money collected therefrom. "Requiring service tax licenses *and exacting tribute, blind to the activity, is an implicit, if not formal recognition.* It cannot be reconciled with Article III, Section 25 of our constitution."

*Bayer,* 349 N.W.2d at 449 (emphasis supplied).

## POWER OF TRIAL COURT TO CORRECT ILLEGAL SENTENCE

In *State v. Tibbetts,* 333 N.W.2d 440, 441 (S.D.1983), this Court made a penetrating analysis of SDCL 23A–31–1. We distinguished the difference between "an illegal sentence which may be corrected at any time" and "a sentence imposed in an illegal manner" which may be reduced within prescribed time constraints. SDCL 23A–31–1 provides in part:

> *A court may correct an illegal sentence at any time* and may correct a sentence imposed in an illegal manner within the time provided in this section for the reduction of sentence. (Emphasis supplied mine.)

Thus, the magistrate court had the right, power, and duty to set aside and correct the illegal sentence which it had imposed on Barry E. Bayer and to serve, thereby, the express word and dictate of the highest Court of this state. Without any question, the magistrate court retained jurisdiction to correct the illegal sentence and it was reversible error for the circuit court judge to enter a decision contrary to the Supreme Court mandate and the settled law and statutes of this state. As one can see by reading the majority opinion, the majority opinion does not fasten its decision on the circuit court's decision at all. It erupts with a "fish or fowl" bit of reasoning which is as far removed from the scene of relevant analysis as the judgment entered by the circuit court. The circuit court's decision was founded upon outrage, namely, the circuit court's outrage that Bayer should not be permitted to recover the money he paid pursuant to the plea bargain because he was in an unconstitutional, profitable business and had no legal standing in moral conscience to ask for the tax money back which he had paid pursuant to the plea bargain. From out of the blue, the circuit court ruled that an admitted violator (Barry E. Bayer) of the State con-

stitution has come into court "with unclean hands" and that he cannot "blandly demand" a "purchase price back from the law and constitutional-abiding taxpayer." (Whatever that means.) The circuit court judge based his decision further upon the fact that Bayer made no payments under protest (the circuit court failing to realize that this was a criminal proceeding and that the money was paid pursuant to a plea bargain), and "was and is violating the constitution" and has "accordingly waived his right to protest his voluntary agreement and that the magistrate court had neither the duty nor the right to make him whole." In other words, the circuit court is telling us that by making the payments under an unconstitutional conviction, defendant Bayer supposedly has "waived" his right to recover the tax money paid under the conviction. Not one supporting statute, case, secondary authority, or constitutional citation is listed in the decision of the lower court. In the magistrate court, as distinguished from the circuit court, formal findings of fact and conclusions of law were entered with supporting statutes, law of the case citation, and pertinent South Dakota and United States Constitutional provisions. The Supreme Court of this state under its "fish or fowl" theory, bottoms its decision on a new theory, namely: that Bayer has waived or forfeited his right to a refund because he did not follow the procedure set out in SDCL ch. 10–55. This Court fails to recognize that the $46,407.56 was paid pursuant to a plea bargain and a criminal judgment of conviction, and it was not paid or tendered in any civil proceeding. Recovery of taxes under SDCL ch. 10–55 applies to the recovery of taxes which are paid pursuant to SDCL ch. 10–45. Here, there was no constitutional sales tax imposed on the proceeds of the business of a bookmaker under SDCL ch. 10–45. For this Court to now hold that the magistrate court is without jurisdiction to refund this money, having determined that the convictions were unconstitutional and should be vacated below, is to, in effect, cast aside the criminal convictions per se but to uphold that aspect of the convictions which decreed the payment of tax money. Such reasoning runs afoul of the concluding language in *Bayer*, 349 N.W.2d at 450, which commands an amendment to the state constitution if privately operated games of chance are to be either licensed *or taxed.*

## CONCLUSION

From the top of the Capitol dome to the innards of the Civil Defense Department deep in the inner recesses of the earth, I dissent. I would affirm and reinstate the magistrate court's decision for the various rationale outlined above and for the principal reason that the money collected by the Department of Revenue pursuant to the guilty plea was constitutionally impermissible; and in violation of the South Dakota Constitution, Article III, § 25; Article VI, §§ 17 and 18; and Article VI, § 20; and likewise in violation of the Fifth and Fourteenth Amendments to the United States Constitution. With pride in my heart, I joined the aureate, well-motivated *Bayer* decision to support the state constitution. With remorse for the result it has spawned via this decision, I respectfully dissent for I observe the State's quest for illicit money elevated over our state constitution, federal constitution, sound criminal procedure, state statutes, and case precedent. Exalted on high before, the state constitution is now given superficial deference; the majority decision is based on reasoning not used by the circuit court, but, rather, upon sua sponte civil procedure which erupts and was never, at any time, employed in securing the criminal convictions and the tax money thereunder.