Barry E. BAYER, Petitioner
and Appellant,

v.

R. Van JOHNSON, Secretary of Revenue
for the State of South Dakota,
Respondent and Appellee.

No. 15224.

Supreme Court of South Dakota.

Considered on Briefs May 21, 1986.

Decided Feb. 11, 1987.

Review Denied March 18, 1987.

Thomas K. Wilka of Hagen & Wilka, Sioux Falls, for petitioner and appellant; Karen E. Schreier of Hagen & Wilka, Sioux Falls, on brief.

John Dewell, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

WUEST, Chief Justice (On reassignment).

Appellant Barry E. Bayer (Bayer) appeals the decision of the trial court in which he was denied a refund of certain sales taxes paid under protest. We affirm.

Bayer applied for and received a retail occupational sales tax license in July, 1981. This license was issued for a service business in the area of amusements. Included in this amusements category are the servic-

es of "bookies" and "bookmakers, race." Pursuant to this license, Bayer paid various amounts of sales tax from November, 1981, through April of 1982 under protest. That dispute concerned how much of the money received by Bayer in his *bookmaking business* was to be considered "gross receipts." SDCL 10–45–1(2). State claimed the entire amount of a lost wage paid by a bettor to a bookmaker is included in the gross receipts without any offset for the losses of the bookmaker. Bayer contended, however, that only his "vigorish" or his service fee was subject to sales tax. That issue was appealed to this court. This court, however, declined to consider that issue and instead noted that since games of chance are prohibited by the South Dakota Constitution under article III, § 25, the State thus has no power to implicitly authorize bookmaking activities by taxing them. *Bayer v. Johnson*, 349 N.W.2d 447 (S.D. 1984) (*Bayer I*). *See also* SDCL 10–45–9.

In *State v. Bayer*, 378 N.W.2d 223 (S.D. 1985) (*Bayer II*), Bayer sought to recover $46,000 in back taxes previously paid through the magistrate court for Minnehaha County, Second Judicial Circuit, as part of a plea bargain on three felony charges of failure to file sales and service tax returns on his bookmaking receipts. In *Bayer II*, we affirmed the circuit court judgment reversing the magistrate's attempt to order a refund of the money paid as part of the plea bargain. Writing for the court, then Chief Justice Fosheim, after rejecting the magistrate's authority to refund the money under the guise of correcting an illegal sentence under SDCL 23A–31–1, stated: "Our legislature has provided an exclusive means for recovery of sales taxes paid and requires that jurisdiction is absent if the procedure established is not strictly followed." *Bayer II*, 378 N.W.2d at 224.

Following this decision, a hearing was held before the Department of Revenue (Department) concerning Bayer's request for refund of sales taxes paid. By stipulation of both parties, this hearing also included additional return periods from April 1982 through April, 1984. After hearing, Department failed to issue an order concerning Bayer's petition for refund. From the failure of Department to enter an order, Bayer appealed. The trial court, however, dismissed Bayer's appeal. It ruled:

> Bayer has refused to provide adequate information to assist either the Secretary or this court in making a full and complete determination as to what portions of the tax funds were constitutionally collected and what portions were unconstitutional collections.... It continues to be speculative so far as the evidence is concerned whether or not the money paid to Department came from gambling. Bayer, through his counsel, argues all around the point and makes assertions that this is the case. However, as this court has previously noted, such speculation or supposition cannot be the basis for ordering a tax refund.

In the most recent hearing before the Secretary of Revenue, following this court's reversal in *Bayer I, supra*, Bayer refused to produce documents substantiating his involvement in bookmaking and invoked his Fifth Amendment right against self-incrimination when asked questions involving bookmaking. Through his testimony, Bayer did, however, claim that the sales tax payments made under protest were paid under a license obtained for the area of amusements. SDCL 10–45–5.2 provides that the services enumerated under major group 79 (amusement and recreation services) in the Standard Industrial Classification Manual 1972 are subject to the retail sales and service tax levied by SDCL ch. 10–45. Bookmakers are included within major group 79. At the hearing before Department, Bayer was questioned regarding each separate category listed under major group 79. He testified that each of the categories listed were *not* the basis upon which he paid the sales taxes, except for categories enumerated "bookies" and "bookmakers, race." He declined to answer inquiries regarding whether or not taxes were paid for these activities based upon his Fifth Amendment privileges.

■ Bayer initially contends that the trial court erred in finding that there was insufficient evidence to show that Bayer paid the taxes under protest on an unconstitutional activity, that being bookmaking. As noted above, Bayer invoked his Fifth Amendment privilege against self-incrimination when asked whether he paid sales taxes upon bookmaking. This he could validly do.

Although a taxpayer may validly invoke the Fifth Amendment privilege against self-incrimination, he may not be the sole judge of whether certain material is incriminating. A court must determine whether the taxpayer is justified in remaining silent. Where the danger of self-incrimination is not readily apparent, the claimant of the privilege has the burden of proving the danger exists. Any danger of incrimination must be real and substantial and not merely remote or speculative.

*Baskin v. United States*, 738 F.2d 975, 977 (8th Cir.1984) (citations omitted).

While it is not completely clear whether bookmaking would be a criminal offense under the South Dakota Code, see SDCL 22–25–1, given, however, the import of our decision in *Bayer I, supra*, Bayer was under a "real and substantial danger of incrimination." *See Baskin, supra*. Thus, it was appropriate for him to invoke his Fifth Amendment privilege during the hearing on his petition for a sales tax refund.

In *Bayer I, supra*, this court stated: "Appellant candidly states he is engaged in the bookmaking business and the facts seem essentially undisputed." 349 N.W.2d at 448. Thus, for purposes of that appeal, this court determined that Bayer was involved in the bookmaking business.

■ The law of the case doctrine is used to provide finality to an issue once it has been determined by a court of record. Once an issue is litigated and decided, it remains settled throughout any subsequent litigation revolving around that issue. *See American State Bank v. List-Mayer*, 350 N.W.2d 44 (S.D.1984).

'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action.'

*Callahan v. Prewitt*, 143 Neb. 787, 13 N.W.2d 660, 662 (1944) (quoting 30 Am.Jur. § 178, at 920). Thus, we hold that this court's disposition in *Bayer I, supra*, settled the question of fact regarding that Bayer's sales taxes paid under protest were based upon his business as a bookmaker. Since the payments were made upon an unconstitutional activity, we hold Bayer cannot recover.

We base our decision upon public policy holding Bayer is denied access to the courts to recover these taxes paid to engage in an unconstitutional and possibly criminal activity. Our rationale is stated in *Jasper v. Rossman*, 73 S.D. 222, 226, 41 N.W.2d 310, 312 (1950), wherein we said:

In the case of *Ferguson v. Yunt*, 13 S.D. 120, 82 N.W. 509, 510, this court said: 'Courts do not lend their aid to parties engaged in transactions in violation of law, and betting and gambling contracts are uniformly held to be contrary to the policy of the law, and illegal.' 'The test to determine whether the plaintiff is entitled to recover', said the court in that case, 'is his ability to establish his case without any aid from the illegal transaction. If his claim or right to recover depends upon a transaction which is malum in se, or prohibited by legislative enactment, and that transaction must necessarily be proved to make out his case, there can be no recovery.' The general rule that the law will not aid either party has been applied to illegal transactions other than gambling. *E.P. Wilbur Trust Co. v. Fahrendorf*, 64 S.D. 124, 265 N.W. 1; *Bartron v. Codington County*, 68 S.D. 309, 2 N.W.2d 337, 140 A.L.R. 550; *Beverage Co. v. Villa Marie Co.*, 69 S.D. 627, 13 N.W.2d 670. The defense of illegality prevails, not as a protection to the defendant, but as a

disability in plaintiff. The reasons for refusing the aid of the court become even stronger when the property is liable to proceedings by the state to enforce a forfeiture.

Although our rationale is different than the trial court, we affirm its judgment.

SABERS, J., and FOSHEIM, Retired Justice, concur.

MORGAN and HENDERSON, JJ., dissent.

MILLER, J., not have been a member of the Court at the time this action was submitted to the Court, did not participate.

MORGAN, Justice (dissenting).

I dissent.

The first chapter of Mr. Bayer's travails involving sales tax actually began in 1981 when he was hailed into magistrate court in Sioux Falls charged with three felony violations of failure to file sales and service tax returns relating to his bookmaking business. SDCL 10–45–49.1. He entered into a plea bargain agreement, adopted by the court, whereby he was given probation upon the conditions: (1) That he pay $62,500 in back taxes, penalties and interest; (2) that he adopt appropriate sales tax record-keeping procedures; and (3) that he have no further violations of SDCL ch. 10–45. Bayer apparently complied with the conditions to the extent that he applied for and received a sales tax license. He also paid some $46,000 of the $62,500 determined as back taxes, penalties and interest.

A dispute arose with the Secretary of the Department of Revenue (Department) as to whether the tax was to be computed on the total sums bet or, as Bayer urged, upon only the "vigorish" or service fee charged the better. Bayer appealed Department's determination and it came before this court via the administrative appeals route in *Bayer v. Johnson*, 349 N.W.2d 447 (S.D. 1984). The majority has denominated that decision as *Bayer I*, although it is the second chapter in the Bayer saga. The majority decision in *Bayer I* determined that bookmaking was an activity prohibited by Article III, section 25 of the South Dakota Constitution and the state was precluded from applying sales tax licensing requirements to gambling activities which are prohibited by the constitution. *Bayer I*, 349 N.W.2d at 450.

As a result of our decision in *Bayer I*, Bayer sought to recover the money paid under the mandate of the magistrate court in the criminal proceedings first noted above. The magistrate attempted to order the sums returned, but the circuit court reversed the order on appeal, based on Bayer's failure to pay the tax under protest. On appeal to this court in *State v. Bayer*, 378 N.W.2d 223 (S.D.1985) (*Bayer II*) we affirmed the circuit court's decision on two grounds: (1) That our legislature has provided an exclusive means for recovery of sales tax paid (payment under protest and suit to recover and jurisdiction is absent if the procedure established is not strictly followed); and (2) that Bayer failed to appeal the conditions of probation imposed by the magistrate court.

In this action, Bayer seeks to recover certain tax payments made under protest in the interim between the magistrate's decision in 1981 and our decision in *Bayer I* in 1984. He made application to Department under SDCL 10–45–53, and upon Department's denial of his petition, the administrative appeal route was followed. The circuit court expanded the proceedings to include some payments not originally incorporated in the application for refund. The circuit court affirmed Department and this appeal to our court followed.

I view the grounds upon which Department denied Bayer's claim to be shabby, at best. As the majority opinion so ably points out, because of our decision in *Bayer I*, Bayer was under a real and substantial danger of incrimination. Further, *Bayer I* settled the question of fact that Bayer's tax payments were based on his business as a bookmaker. The pretense under which Department and the circuit court acted should be reversed.

It is at this point that the otherwise well-written and logical majority opinion loses me completely. The majority states:

"Since the payments were made upon an unconstitutional activity, we hold Bayer cannot recover." What unconstitutional activity are we talking about? I agree that Bayer's bookmaking activity falls within the classification of games of chance which the legislature is forbidden to approve under Article III, section 25 of the South Dakota Constitution. I point out that the exaction of a sales tax on bookmaking activities is the unconstitutional activity we struck down in *Bayer I:* "If it be the will of the people to license, tax and thus authorize privately operated games of chance, that likewise requires further amendment. It cannot be done by the legislature." 349 N.W.2d at 450. The constitution does not declare bookmaking illegal or unconstitutional. It prohibits the legislature from authorizing such activity. That is what constitutions are for. They are grants of authority to the legislature or limitations thereon. It rings a little hollow to piously say that we deny access to the courts to Bayer for his so-called unconstitutional activity, but thereby protect the unconstitutional activity of the State in collecting illegal taxes with the aid and assistance of our lower court.

The cases cited as rationale supporting the majority opinion are clearly distinguishable from this case. They all involve transactions that were *in and of themselves illegal.* In *Jasper v. Rossman,* 73 S.D. 222, 41 N.W.2d 310 (1950), the suit was for the balance due on a sale of gambling equipment (punchboards). In *Ferguson v. Yunt,* 13 S.D. 120, 82 N.W. 509 (1900), the suit was to recover on the bond of a stakeholder of a horse-racing bet. *E.P. Wilbur Trust Co. v. Fahrendorf,* 64 S.D. 124, 265 N.W. 1 (1936), involved a suit to recover on a note executed under the inducement of an agreement not to prosecute for alleged embezzlement. In *Bartron v. Codington County,* 68 S.D. 309, 2 N.W.2d 337 (1942), the suit was for recovery for services and supplies furnished indigents under a contract between the county and a professional corporation of physicians when it was illegal for physicians to incorporate. And finally, *Beverage Co. v. Villa Marie Co.,* 69 S.D. 627, 13 N.W.2d 670 (1944), was for

recovery on an illegal transaction for the sale of saloon equipment by a beer distributor to a retail outlet. The transaction involved in the case before us is the payment of taxes. The payment of taxes, burdensome as it may seem sometimes, is hardly an illegal transaction. True, we said in *Bayer I* that it was unconstitutional for the legislature to impose a sales tax on bookmaking. We did not say, however, that it was either unconstitutional or illegal to *pay* the tax.

Finally, I note some language in *Jasper, supra:* "The defense of illegality prevails, not as a protection to the defendant, but as a disability in plaintiff. The reasons for refusing the aid of the court become even stronger when the property is liable to proceedings by the state to enforce a forfeiture." 73 S.D. at 226, 41 N.W.2d at 312. Again, I point out that the payment of taxes is not illegal, nor is the tax money liable to forfeiture.

I am authorized to state that Justice HENDERSON joins in this dissent.