Barry E. BAYER, Petitioner
and Appellant,

v.

Judith PAYNE, Secretary of Revenue
for the State of South Dakota,
Respondent and Appellee.

No. 15594.

Supreme Court of South Dakota.

Considered on Briefs May 19, 1987.

Decided Aug. 19, 1987.

Thomas K. Wilka, Sioux Falls, for petitioner and appellant; Karen E. Schreier, Sioux Falls, on brief.

Roger A. Tellinghuisen, Atty. Gen., and John Dewell, Asst. Atty. Gen., Pierre, for respondent and appellee.

DOBBERPUHL, Circuit Judge.

Barry E. Bayer (Bayer) appeals from an order dismissing his suit for the recovery of sales taxes paid on his bookmaking activities. We affirm.

## FACTS

Bayer's sales tax problems can be traced to a July 12, 1981 criminal complaint alleging failure to file retail sales and service tax returns on his bookmaking operations.

This complaint was disposed of by a July 13, 1981 plea bargain. As part of the plea bargain Bayer was to pay the tax, penalty and interest, keep adequate records, and pay taxes in the future based on his gross receipts.

Pursuant to the plea bargain, Bayer did pay some sales tax. A dispute arose, however, on whether the tax was to be paid on gross receipts, the "vigorish," or the service fee. This dispute came before the court in *Bayer v. Johnson,* 349 N.W.2d 447 (S.D.1984) (*Bayer I*). We declined to consider that issue and instead held that the collection of sales tax on bookmaking activities is not authorized because it would be an implicit recognition of bookmaking. A recognition of bookmaking is not allowed under the South Dakota Constitution.

With *Bayer I* in mind, Bayer sought the return of the sales taxes he paid on bookmaking activities. This resulted in *State v. Bayer,* 378 N.W.2d 223 (S.D.1985) (*Bayer II*). In *Bayer II,* we held that a magistrate did not have the jurisdiction to return sales tax paid pursuant to a plea bargain. The recovery of sales tax must be exclusively pursued through the laws passed by the legislature.

Bayer, not to be discouraged, then filed suit in Hughes County Circuit Court seeking recovery of the tax under statutes passed by the legislature. *Bayer v. Johnson,* 400 N.W.2d 884 (S.D.1987) (*Bayer III*). In *Bayer III* we stated that "[s]ince the payments were made upon an unconstitutional activity, ... Bayer cannot recover." *Bayer III, supra,* 400 N.W.2d at 886. We based our decision upon public policy, holding that "Bayer is denied access to the courts to recover these taxes paid to engage in an unconstitutional and possibly criminal activity." *Id.*

With this background in mind, we now turn to the case at bar.

## DISCUSSION

Bayer brought this suit in Minnehaha County Circuit Court seeking the refund of the sales tax he paid on his bookmaking

activities. This is the same sales tax that was at issue in *Bayer II* and *Bayer III*.

Like *Bayer III*, Bayer bases his suit upon the tax recovery statutes found in the South Dakota Codified Laws. In essence, the case at bar is identical to that presented in *Bayer III*.

We hold that our decision in *Bayer III* is controlling, and all the issues presented here are res judicata. The dismissal by the trial court is affirmed.

WUEST, C.J. and SABERS, J., concur.

MORGAN and HENDERSON, JJ., dissent.

DOBBERPUHL, Circuit Judge, sitting for MILLER, J., disqualified.

MORGAN, Justice (dissenting).

I cannot join in the majority disposition of this appeal because it relies upon our earlier decision, *Bayer v. Johnson*, 400 N.W.2d 884 (S.D.1987) (*Bayer III*), which I consider to be an ill-conceived and ill-advised decision that should be overruled.

The decision in *Bayer III* was grounded on the activities in which Bayer rendered the services that resulted in his purported tax liability. As the majority stated: "Bayer's sales taxes paid under protest were based upon his business as a bookmaker. Since the payments were made upon an unconstitutional activity, we hold Bayer cannot recover." *Id.* at 886. The decision then went on to hold that because the taxes were paid to engage in an unconstitutional and possibly criminal activity, Bayer would be denied access to the courts.

Rather than reiterate my dissent[1] in *Bayer III* in extenso, I will merely summarize it with some additional comments. First, the only "unconstitutional" action was that of the legislature in enacting the provisions of SDCL 10-45-5.2, which imposed the sales or service tax on bookmakers in contravention of art. III, § 25 of the

South Dakota Constitution, which prohibits the *legislature* from authorizing games of chance.

Secondly, on the issue of illegality of Bayer's activities, conceding that they were prohibited under the provisions of SDCL ch. 22–25, they were, on the other hand, blessed under the provisions of SDCL ch. 10–45 (the sales and service tax laws). As this court said in *Bayer v. Johnson*, 349 N.W.2d 447, 449 (S.D.1984) (*Bayer I*): "In licensing bookmaking as a service subject to a retail service tax, *the legislature is effectively authorizing a game of chance* and treating it as a legitimate source of revenue." (Emphasis added.) The *Bayer III* decision apparently concedes this dilemma when it said Bayer was engaging in "*possibly* criminal activities." (Emphasis added.)

Next, the authorities upon which the *Bayer III* court relied for its so-called public policy position were totally inappropriate. The transactions involved in the premised authoritative cases were all illegal, in and of themselves. But, the payment of a service tax, even based on a clearly illegal activity, is patently one step removed from the illegal transaction itself.

Finally, I question the *Bayer III* determination that it is public policy to deny Bayer access to the courts under the circumstances that were present. Here, I find a most persuasive statement of public policy in the South Dakota Constitution, art. VI, § 20, the so-called open courts provision.[2] Couple that with the provisions of art. III, § 27, providing for suits against the state and the legislative enactment of SDCL ch. 10–55A, and its predecessor ch. 10–55, providing for the recovery of taxes wrongfully paid (tax refund provisions), and I think that the *Bayer III* majority was presumptuous in determining that Bayer should be denied access to the courts "as a matter of public policy."

---

1. *Bayer v. Johnson*, 400 N.W.2d 884, 887 (S.D. 1987).

2. "All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay."

This action involves only the $46,000 or so that Bayer paid under the threat of imprisonment in the criminal proceedings before the magistrate's court. *Bayer III* involved those payments plus some additional payments. The trial court, in this case, did not rely on *Bayer III* and the doctrine of res judicata, but rather decided against Bayer on the grounds that the three-year statute of limitations, SDCL 10–45–53, had run. It further determined that the statute of limitations was not tolled because, although the payments made pursuant to the plea bargain were compulsory, Bayer was not precluded from seeking recovery pursuant to the provisions of the tax refund provisions.

If *Bayer III* stands, as I have no doubt it will, the trial court is probably correct in its analysis; but, if *Bayer III* is overturned as I fervently believe it should be, I would hold the trial court in error. In *State v. Bayer*, 378 N.W.2d 223 (S.D.1985) (*Bayer II*), Bayer first tried to recover this money by refund through the criminal court system, through which it was exacted. In *Bayer II*, we held that was improper, but that he should seek relief through the tax refund procedure. His action in *Bayer III* was clearly in response to that directive, but ran afoul of both the Department of Revenue and the circuit court when he refused to incriminate himself by admitting that he was a bookmaker; the aegis of the tax statute having then been struck down as unconstitutional. The *Bayer III* decision dispensed with that problem by invoking the law of the case doctrine; but, then, the public policy aberration set in.

I would, therefore, overrule our decision in *Bayer III* and reverse the trial court below upon the grounds that Bayer had indeed, in timely fashion, sought restitution of the taxes illegally and unconstitutionally *exacted* by the Department of Revenue and the magistrate's court.

HENDERSON, Justice (dissenting).

First, I join, spiritually, the dissent of Justice Morgan. This dissent is not intended to disparage nor contravene his writing.

Needless to say, as the author of *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n*, 349 N.W.2d 419 (S.D.1984), I find it difficult to intellectually swallow the public policy declaration to deny Bayer access to the courts of this state.[1] *Daugaard*, though assailed in a dissent in this Court, was later approved in *Zacher v. Budd Co.*, 396 N.W.2d 122 (S.D.1986). *See Salem Sch. Dist. v. Puetz Constr.*, 353 N.W.2d 51 (S.D. 1984). *See also Wright v. International Harvester Co.*, 736 F.2d 483 (8th Cir.1984) (per curiam). Pridefully, it is called to the attention of the reader that the words of *Daugaard* were approved by the Supreme Court of Arizona in *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984) (en banc), and the Supreme Court of Utah in *Berry v. Beech Aircraft*, 717 P.2d 670 (Utah 1985). *Zacher*, 396 N.W.2d at 131.

Justice Morgan notes that these taxes were unconstitutionally *exacted* by the Department of Revenue. I agree. In this regard, I wish to point out to the reader my dissent in *Bayer II*, 378 N.W.2d 223, 225 (S.D.1985). I was the lone dissenter in *Bayer II*. Four captions containing four different subjects were highlighted in my dissent as to why the State of South Dakota was so wrong in its exaction of this money. One of those concepts was "UNCONSTITUTIONAL CONVICTION CANNOT BEGET CONSTITUTIONAL TAX MONEY." *Id.*

Referring to my dissent in *Bayer II*, 378 N.W.2d at 225, I wish to call *State v. Piekkola*, 90 S.D. 335, 241 N.W.2d 563 (1976), to the attention, once again, of students of the law. In sum, the case holding is that a fine and costs paid by an individual, convicted under an unconstitutional statute, constitutes a violation of taking one's property without due process of the Fifth Amendment. Here, glaringly, Bayer being denied access to the courts, when he seeks a refund of a sales tax paid pursuant to a plea agreement on an activity not subject

1. Article VI, § 20, of the South Dakota Constitution manifests the intention of our forefathers that this state's courts shall remain open for an injury done to a man's or woman's property, person, reputation.

to a sales tax under the South Dakota Constitution, amounts to a taking of his property without due process. Failing to return a fine and costs collected from any individual pursuant to an unconstitutional conviction, is a violation of the Fifth Amendment. *United States v. Summa,* 362 F.Supp. 1177 (D.Conn.1972); *United States v. Lewis,* 342 F.Supp. 833 (E.D.La. 1972), *aff'd,* 478 F.2d 835 (5th Cir.1973); *Ex Parte McCurley,* 412 So.2d 1236 (Ala.1982), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1301; *People v. Meyerowitz,* 61 Ill.2d 200, 335 N.E.2d 1 (1975).

As regards "possibly criminal activity," referred to in the *Bayer III* decision, 400 N.W.2d at 886, emphasized in Justice Morgan's dissent, I would like to point out that the only criminal action filed against Bayer was for failure to file a sales tax return. Said criminal conviction was vacated on August 13, 1984, as a direct consequence of *Bayer I.*

Particularly disturbing to this author is the "public policy" argument for still another reason: Potential sales taxes due must be paid under the scheme of SDCL ch. 10–55A. SDCL 10–55A–3 mandates a taxpayer to pay taxes when due and thereafter seek recovery as provided in SDCL ch. 10–55A. The statute is rough and tough in that it precludes the Court System from either restricting or delaying the collection of payment of sales tax. The message is clear: Pay the potential tax, Mr. Taxpayer, and then file a claim with the Department for a refund. SDCL 10–55A–2. Bayer entered into a Plea Agreement, approved by the court, and followed the terms of the Plea Agreement and paid the sales tax allegedly owed to the State because of the criminal conviction. The majority continues to misunderstand and misapprehend and recognize this salient fact: His conviction has been vacated. Therefore, when this Court relies upon "public policy" to preclude Bayer from recovering a sales tax refund, the decision will ring out a message to other taxpayers to with-

hold payment of a tax if there is any question at all concerning the constitutionality of the taxed activity. Bayer had a tremendous dilemma: He could pay the sales tax in question via a Court Order as reflected in an instrument "Terms of Plea and Appropriate Disposition," and thereby be denied access to the courts to recover the taxes paid, *or* to simply not pay the sales tax at all and then be incarcerated behind bars.

Let there be no doubt that Bayer was under duress. He was actually confined contrary to the South Dakota Constitution for failure to file a retail and service tax return. Duress is defined under SDCL 53–4–3. Five definitions of duress are specified. Taxes paid under duress or coercion are not subject.to the three-year statute of limitations specified in SDCL 10–45–53.[2] Bayer was unable to petition for a refund because of the Magistrate Court's sentence of July 13, 1981. He labored under this disability until the Magistrate Court vacated the Judgment of Conviction on August 13, 1984. Bayer did timely file this action within three years from August 13, 1984. An operation of a statute of limitations does not accrue until the time that the duress ceases to exist. *See Pierce v. Estate of Haverlah,* 428 S.W.2d 422 (Tex.Civ. App.1968). In my opinion, Bayer's cause of action did not accrue until the Supreme Court of this State rendered its decision in *Bayer v. Johnson,* 349 N.W.2d 447, on June 13, 1984.

It would appear that the $46,407.56 in sales tax was paid under coercion and I would reverse the trial court with a remand to the Department of Revenue to pay Bayer his money which he was coerced into paying.

**2.** SDCL 10–45–53 was repealed by 1986 S.D. Sess. Laws ch. 111, § 30.