## BRADFORD v. HURT et al.
### No. 3647–903.

District Court, N. D. Texas, Dallas Division.
April 25, 1936.

Gordon Simpson and Lasseter, Simpson & Spruiell, all of Tyler, Tex., for complainant.

W. F. Clark, of Dallas, Tex., for respondents.

## DAVIDSON, District Judge.

The complainant, Carson Bradford, alleges that he is an actual bona fide citizen and resident of the state of Florida and that the respondents Robert L. Hurt and Smoot Schmid are residents of Dallas county, Tex., and are respectively the district attorney and sheriff of such county. Complainant sets out that he has leased a certain lot in the confines of Dallas, Tex., and has expended large sums of money thereon; that he entered into said lease for the purpose of erecting, maintaining, and operating a racing track wherein he planned to erect grandstands, dog paddocks, booths and a race course in connection with which he intended and still intends to install a mechanical device whereby an artificial rabbit is propelled along said track for the purpose of encouraging dogs to race against one another by pursuing said rabbit, thereby affording a contest involving the skill and speed of said dogs for the entertainment of such persons as might care for an admission charge to attend and witness said races: that likewise the complainant intended and intends to establish appropriate offices for the establishment of what is called a pari-mutuel betting system whereby persons might bet and wager upon the outcome of said races; that the respondents Robert L. Hurt and Smoot Schmid have threatened to interfere with the operation of such establishment by a criminal prosecution and by injunctive relief. He further alleges that the proposed establishment is in all respects legal and is not prohibited by any valid law of the state of Texas or of the United States. And he alleges that the action of the said district attorney and sheriff is without warrant of law, but will have the effect of inflicting upon him an irreparable injury in the interference of his property rights under the Fourteenth Amendment of the United States Constitution; that he has against the action of such respondents no adequate remedy at law.

The respondents deny any intention of interfering with the complainant in the exercise of any legal right and disclaim any intention of interfering with his operation of a rabbit and dog racing track so long as the same is not conducted in violation of the laws of the state of Texas, and they admit that the operating of such racing track is not prohibited by the laws of the state of Texas. They claim, however, that the operation of a pari-mutuel betting and wagering establishment is a legal nuisance and is prohibited by law, and they admit their intentions to interfere if betting and wagering is attempted thereon.

The action of the complainant in filing this bill is perhaps in effect a desire to obtain from the court what would in effect be a declaratory judgment.

The allegations in complainant's bill that the proposed betting and wagering establishment is entirely legal and not in violation of any law of the state of Texas or of the United States is probably due to a current misunderstanding and interpre-

tation of the opinion in the Thomas Case lately rendered by the Court of Criminal Appeals of the State of Texas, Thomas v. State, 91 S.W.(2d) 716, 719. In that case Thomas was convicted in Houston, Harris county, Tex., and given two years in the penitentiary under the general gambling laws of Texas as contained in article 625 of the Penal Code. Thomas was in fact engaged in listing and accepting bets on horse races run in Texas and out of Texas and when the results of the races had been announced he would, by a systematic arrangement, disburse the money in accordance with the various wagers made. After the passage of the general gambling law as set forth in article 625, the state of Texas had enacted special laws dealing with gambling on horse races and the penalties under these statutes were misdemeanors only and did not subject offenders to imprisonment in the penitentiary. The holding in the Thomas Case was to the effect that the defendant should have been prosecuted under the horse racing statute and not under the general statute and that an offense at most would have been a misdemeanor and not a term in the penitentiary. Judges Morrow and Hawkins in summing up and reviewing the opinion state: "Apparently from the legislation in this State bearing upon the subject in hand, a distinction is made between the penalties for facilitating bets and gambling on horse races, and facilitating betting and gambling on other things." The effect, therefore, of the Thomas decision is that when a general law, dealing with a subject, has been enacted and thereafter a special law, dealing with some branch of the subject, is enacted, the special law will prevail over the general law as to the matters embraced therein.

There is no statute specifically dealing with betting on dog and rabbit races. Therefore, if wagering and betting are to be had thereon, and if such wagering and betting is prohibited by the laws of the state, then it comes under article 625 of the Penal Code, which is the general gambling law of Texas. The question, therefore, arises as to whether or not the proposed establishment comes within the provisions of article 625 of the Penal Code.

In the bill of complaint we find the following admission and declaration of purpose as to the intent and character of the proposed racing operations: "The sole plan and purpose of complainant in entering into said lease is for the purpose of erecting and maintaining and operating a racing track * * * to install a mechanical device whereby an artificial rabbit is propelled along said race track for the purpose of encouraging dogs to race one against the other by pursuing said rabbits * * * likewise the complainant intended and intends to establish appropriate offices for the establishment of what is called a pari-mutuel betting system whereby persons might bet and wager upon the outcome of such races."

Article 625 of the Penal Code of Texas contains, among other things, the following pertinent provisions: "If any person shall keep * * * any premises, building, room or place for the purpose of being used as a place to bet or wager * * * upon anything whatever, he shall be confined in the penitentiary not less than two nor more than four years. * * * Any place or device shall be considered as used for gaming or to gamble with or for betting or wagering, if any money or anything of value is bet thereon, or if the same is resorted to for the purpose of gaming or betting."

We consider the foregoing statute to be all-inclusive in its terms, and that it is not limited to cards, dice, dominoes, or any wheel or machine, but includes every place and every device upon which money may be bet or place where people resort for the purpose of gambling or betting. Words employed by the Legislature are ordinarily to be accepted in their usual and most widely known meaning. Webster defines a "place" as follows: "A building, a part of a building or other spot, set apart for a special purpose." Bouvier, in definition of the word "place," says: "Any piece of ground appropriated by its owner or occupier for the time being is a place within the English betting houses act. * * * A piece of ground bounded on one side by a boarding and two other sides by stays which support the boarding is a place under 16 & 17 Vic. C. 119 relating to betting." Bouvier, defines "device" as "that which is devised or formed by design, a contrivance, an invention." Bouv.Law Dict.(Rawle's 3d Rev.) pp. 2595, 861. By act of Congress, January 31, 1883 (22 Stat. 411) various forms of gambling were outlawed. Among those mentioned was "gambling devices." Section 4 of the act declares: "That all games, devices, or contrivances at which money or any other

thing shall be bet or wagered shall be deemed a gaming table within the meaning of this act." Held that bookmaking on a horse race was a game of chance or "gambling device" within the meaning of the act. Words and Phrases, First Series, vol. 4, p. 3030.

 We think, in the light of the statute, that the admitted and declared purpose of the complainant would embrace the operation and maintenance of an unlawful place for the purpose of gambling and betting within the terms of article 625 of the Penal Code of the state of Texas.

. If, as believed by complainant, there were no law in Texas against gambling of this character, then his position would be better and more easily understood.

The Legislature has not repealed arti- P.C., nor have the courts of last Texas held it invalid or uncon- It is, therefore, the law. Gameover, is not considered condu- d morals, and any step to facili- large its practice when not de- r written law would be an act und public policy. Again, if no law upon the statute books night still be questionable as to r not a court of equity should ight to gamble or to conduct a etting and wagering as a proper- der the terms of the Fourteenth t to the Constitution of the ites. We know that there are which treat gambling as being vhen denounced by law, but we ny court should go so far as to s equitable powers for the pro- the right to gamble or to treat as a property right within the f the Fourteenth Amendment to ution of the United States. It sary, however, to decide this s in the opinion of the court of the Penal Code of the state is still a valid law of the state ces within its terms the betting ing contemplated. The fact that be a show or a dog race or other e given at the place will not ase. This would only tend to . crowd to the place where the wagering or betting is to be had.

"Federal court will not enjoin seizure of slot machines by state peace officers where there has been no determination by state courts of the lawfulness of the machine." Essman v. Hood (D.C.) 45 F.(2d) 881.

Federal equity jurisdiction will not be exerted to interfere in matters involving fiscal or public affairs of a state without showing the existence of a substantial right and a threatened and irreparable injury. Pope v. St. Lucie Inlet Dist. and Port Authority (C.C.A.) 75 F.(2d) 865.

 We do not think that the doctrine of ejusdem generis is applicable to this case. Article 625 in question deals primarily with gambling houses and places rather than with specific games, and when viewed in this light the doctrine is not applicable as insisted by the complainant.

The application for a restraining order or injunction is refused and denied.