**Barry E. BAYER, Petitioner and Appellant,**

**v.**

**R. Van JOHNSON, Secretary of Revenue for the State of South Dakota, Respondent and Appellee.**

**No. 14314.**

Supreme Court of South Dakota.

Argued April 16, 1984.

Decided June 13, 1984.

Rehearing Denied
July 19, 1984.

Thomas K. Wilka of Hagen & Wilka, Sioux Falls, for petitioner and appellant; Karen E. Bjerke, Sioux Falls, on brief.

John Dewell, Asst. Atty. Gen., Pierre, for respondent and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

FOSHEIM, Chief Justice.

This is an administrative appeal from a decision of the South Dakota Secretary of Revenue (Secretary) which denied Barry E. Bayer's application for a refund of sales tax paid under protest. The circuit court affirmed the Secretary. We reverse.

Appellant candidly states he is engaged in the bookmaking business and the facts seem essentially undisputed. SDCL 10–45–5.2, by reference, subjects bookmaking to the retail sales and service tax.[1] Mr. Bayer holds a retail occupational sales tax license for a service business in the area of amusements.

It is also undisputed that as a provider of services a bookmaker is taxed pursuant to SDCL 10–45–4, which reads:

There is hereby imposed a tax at the same rate as that imposed upon sales of tangible personal property in this state upon the *gross receipts* of any person from the engaging or continuing in the practice of any business in which a service is rendered. Any service as defined by § 10–45–4.1 shall be taxable, unless the service is specifically exempt from the provisions of this chapter. [emphasis added]

"Gross receipts" means

the amount received in money, credits, property, or other money's worth in consideration of sales at retail within this state, without any deduction on account of the cost of the property sold, the cost of materials used, the cost of labor or services purchased, amounts paid for interest or discounts, or any other expenses whatsoever, *nor shall any deduction be allowed for losses* .... [emphasis added]

SDCL 10–45–1(2). "Sales at retail" includes sale of services. SDCL 10–45–1(5).

The dispute concerns how much of the money received by a bookmaker in a bookmaking transaction is to be considered gross receipts. The Secretary claims the entire amount of a lost wager paid by a bettor to a bookmaker is includable in gross receipts, without any offset for losses of the bookmaker. It is the position of appellant that only the "vigorish," or service fee, is subject to the tax.

■ We perceive no way this issue can be decided without giving tacit approval to that which is constitutionally forbidden. Article III, Section 25 of our state constitution clearly provides: "The Legislature shall not authorize any game of chance, lottery or gift enterprise, under any pre-

---

1. SDCL 10–45–5.2 provides that the services enumerated under major group 79 (amusement and recreation services) in the *Standard Industrial Classification Manual,* 1972 (prepared by the Statistical Policy Division of the Office of Management and Budget, Office of the Presi-

dent), are subject to the retail sales and service tax levied by SDCL ch. 10–45. The federal publication, at p. 319, includes bookmakers within the group, "Amusement and Recreation Services."

tense or for any purpose whatever ...." [2] A "game of chance" is a contest wherein chance predominates over skill. *Boies v. Bartell,* 82 Ariz. 217, 310 P.2d 834 (1957); *Indoor Recreation Enterprises, Inc. v. Douglas,* 194 Neb. 715, 235 N.W.2d 398 (1975); *Baedaro v. Caldwell,* 156 Neb. 489, 56 N.W.2d 706 (1953); 18 *Words and Phrases* "Game of Chance" (1956).

■ While the record reveals no evidence of appellant's bookmaking methods, he did establish usual bookmaking practices by the testimony of an expert witness. According to this witness, a bookmaker receives wagers from players, or customers, the outcome of which depends upon the happening of an uncertain event. The occurrence of the event determines which party, the player or the bookmaker, must pay the other an amount specified at the time the wager was placed. Appellant's witness identified races and athletic events as frequent subjects of bookmaking. The outcome of such events in no way depends upon the skill of the bettors. The wagering is therefore a contest in which chance predominates over skill. Bookmaking is accordingly a "game of chance" which the legislature is constitutionally prohibited from authorizing. *Cf. United States v. Thompson,* 409 F.Supp. 1044 (D.C.Mont. 1976); *State ex rel. Dussault v. Kilburn,* 111 Mont. 400, 109 P.2d 1113 (1941) (betting on outcome of athletic event is a "game of chance"); *Bradford v. Hurt,* 15 F.Supp. 426 (D.C.Tex.1936) *aff'd* 84 F.2d 722 (5th Cir.1936) (bookmaking on dog racing is "game of chance" or gambling device within meaning of federal statute outlawing gambling and gambling devices).

■ In licensing bookmaking as a service subject to a retail service tax, the legislature is effectively authorizing a game of chance and treating it as a legitimate source of revenue. Requiring service tax licenses and exacting tribute, blind to the activity, is an implicit, if not formal recognition. It cannot be reconciled with Article III, Section 25 of our constitution.

This conclusion can come as no surprise. We recently reaffirmed our long-standing position that, regarding matters of gambling, it is the duty of the courts to pierce any disguise of legitimacy and to ascertain the real activities involved. *Bayer v. Burke,* 338 N.W.2d 293 (S.D.1983); *Waite v. Frank,* 14 S.D. 626, 86 N.W. 645 (1901).

■ The Secretary seems to justify the tax by arguing that Congress has imposed a tax on income derived from illegal sources, *James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961); *Rutkin v. United States,* 72 S.Ct. 571, 343 U.S. 130, 96 L.Ed. 833 (1952); *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020 (1927), including a wagering tax. 26 U.S.C. § 4401 et seq. (West Supp.1984). Federal practice is not analogous. Unlike the South Dakota Constitution, the United States Constitution is silent about whether the Congress may authorize games of chance.

Neither party has challenged the constitutionality of the tax statute involved. We have consistently held that the constitutionality of a statute cannot be raised for the first time on appeal. *State v. Williams,* 84 S.D. 547, 173 N.W.2d 889 (S.D.1970); *Empey v. Rapid City,* 78 S.D. 462, 103 N.W.2d 861 (1960); *Tri-State Auto Auction, Inc. v. Ostroot,* 76 S.D. 356, 78 N.W.2d 468 (1956). This position has arisen, however, in response to parties who urge it on appeal but who failed to raise the question with the trial court. We have never decided whether this court *sua sponte* will examine a patent constitutional dilemma not raised by either party.

■ There is good authority that where the appellate court has jurisdiction on other grounds it may decide a constitutional question on its own motion. *City of St. Louis v. Butler Co.,* 358 Mo. 1221, 219 S.W.2d 372 (1949); 4 C.J.S. *Appeal & Error* § 240 (1957). This is especially true when the constitutional question is decisive of the appeal, *In re Clark's Estate,* 105

---

**2.** Certain exceptions are permitted for public-spirited uses. *See* S.D. Const. Art. III, § 25.

Mont. 401, 74 P.2d 401, 114 A.L.R. 496 (1937), or when the point is one of law and not dependent on facts that might have been presented below had the point been there raised. *Stierle v. Rohmeyer*, 218 Wis. 149, 260 N.W. 647 (1935).

State officials, including supreme court justices, are by constitutional mandate required to take an oath or affirmation to support the constitution of this state. S.D. Const. Art. XXI, § 3. Courts, above all, must jealously protect the integrity of the constitution. In the case of *In re Clark's Estate, supra,* the Montana Supreme Court supported its consideration of a state constitutional issue not raised by the parties with this reference to the oath:

> In the case of *Marbury v. Madison,* 1 Cranch 137, 179, 2 L.Ed. 60, Chief Justice Marshall, after reviewing various provisions of the Federal Constitution, said: "From these, and many other selections which might be made, it is apparent, that the framers of the constitution contemplated that instrument, as a rule for the government of courts, as well as of the legislature. Why otherwise does it direct the judges to take an oath to support it? This oath certainly applies, in an especial manner, to their conduct in their official character. How immoral to impose it on them, if they were to be used as the instruments, and the knowing instruments, for violating what they swear to support! * * * Why does a judge swear to discharge his duties agreeably to the constitution of the United States, if that constitution forms no rule for his government? If it is closed upon him, and cannot be inspected by him? If such be the real estate of things, this is worse than solemn mockery. To prescribe, or to take this oath, becomes equally a crime."

*Id.* 105 Mont. at 411–412, 74 P.2d at 406. We would be less than supportive if we failed to meet that which is constitutionally offensive.

■ In 1970 the people of South Dakota amended Article III, Section 25 of our constitution by adding a proviso authorizing games of chance by public-spirited organizations. If it be the will of the people to license, tax and thus authorize privately operated games of chance, that likewise requires further amendment. It cannot be done by the legislature.

Reversed.

All the Justices concur.