**Vernetta Jean JOHANSEN,**
**Plaintiff and Appellee,**

v.

**Darrel Ray JOHANSEN, Defendant**
**and Appellant.**

**No. 14540.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 25, 1984.

Decided April 3, 1985.

Vernetta Jean Johansen, pro se.

William J. Ellingson, Flandreau, for appellant.

MORGAN, Justice.

This appeal is from an order issued after a show cause hearing in which appellant Darrel Johansen (Darrel) sought amendment of the divorce decree and requested custody of the parties' two children and $100 per month per child for support from appellee, Vernetta Johansen (Vernetta). The order to show cause further requested that Vernetta show why she should not be adjudged in contempt for her failure to comply with the provisions of the property division which required her to sign certain joint income tax returns. The order amended the custody decree, denied Dar-

rel's request for child support from Vernetta, and denied the contempt adjudication. Darrel appeals from the second and third holdings. We reverse and remand.

Darrel and Vernetta were married on August 24, 1973. Two children were born during the marriage; Randi, now age ten, and Jamie, now age seven. The parties were divorced on January 12, 1982. The divorce decree approved and incorporated by reference a separation, custody, and property settlement agreement. Under that agreement and the divorce decree, Vernetta was awarded sole custody of the children and Darrel was ordered to pay one-fourth of his monthly net earnings or a minimum of $50 per month in child support. The property settlement agreement equitably divided the parties' property and debts, with a specific provision regarding execution of certain income tax returns more fully discussed later. At the hearing on the order to show cause on December 30, 1983, Vernetta appeared and voluntarily consented to the change of custody. As a result of the hearing, the order of the court issued (1) changing custody of the children to Darrel; (2) denying child support from Vernetta; and (3) holding that Vernetta was not in contempt of court for failure to execute the income tax returns.

We first examine Darrel's assertion that the trial court erred in failing to require Vernetta to pay child support. The decision provided as follows:

The Court further finds that the defendant has supplied very little support for the minor children while they were in their mother's custody, and finds that the defendant, DARREL RAY JOHANSEN, has not made a showing that he can or cannot financially support the children if there is a change of custody; however, the Court can only assume that he will provide proper support as it was shown at the time of the divorce that he had the abilities to support his family if he should be so inclined. Therefore, until there is a showing otherwise, no support will be ordered of the plaintiff until a further order of the Court. The plaintiff

has contributed almost all of the support for the past two years, and the defendant should assume a similar responsibility for at least a period of time.

■ Child support awards are made or denied on the basis of what is reasonable and suitable to the child's circumstances and situation in life and the parents' financial means and ability to pay. *Rykhus v. Rykhus,* 319 N.W.2d 167 (S.D.1982). In granting or denying child support, a trial court *must* consider the reasonable expenditures suitable to the child's circumstances and situation in life and the parents' financial means or ability to pay. *Wallahan v. Wallahan,* 284 N.W.2d 21 (S.D.1979).

■ The record does disclose that most of the time between the divorce and the hearing Darrel was unemployed, while Vernetta worked full-time throughout that period. This lends little credence to the trial court's assumption that Darrel has the same ability to support his family as he had at the time of divorce. Furthermore, the court's statement that "[Vernetta] has contributed almost all of the support for the past two years and [Darrel] should assume a similar responsiblity for at least a period of time" sounds as though the trial court were balancing the equitable rights between the parties. The trial judge decided to force Darrel to support the children by himself because Vernetta supported them for two years on her own as a result of Darrel's failure to pay child support. This type of balancing is not a proper basis for the grant or denial of child support. The children's interest must be the primary consideration.

■ This court does not sit as the trier of facts and will not disturb a child support award unless it appears that the trial court abused its discretion in entering its judgment. *Barrett v. Barrett,* 308 N.W.2d 884 (S.D.1981); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). Only a "clear" abuse of discretion warrants reversal. *Rykhus, supra.* "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Gross v. Gross,* 355 N.W.2d 4, 7 (S.D.1984).

In this case, the trial court's denial of child support was aimed at an unjustifiable end or purpose, consequently we find that the trial court abused its discretion.

■ If Darrel failed to make a showing as to his and Vernetta's respective abilities to support the children the trial court had the authority to determine the needs of the children. The trial court could have continued the hearing and directed the parties to produce the evidence required. In consideration of the children's welfare, the trial court's primary concern, we suggest on remand that it do so.

We next examine Darrel's assertion that the trial court erred in not adjudging Vernetta in contempt for her refusal to sign joint income tax returns for the years 1978, 1979, and 1980, in compliance with the decree. To understand this issue, some background is necessary. Neither party had filed an income tax return for 1978, nor had Darrel filed returns for 1979 or 1980. Vernetta had filed individual returns for 1979 and 1980, claiming the children as dependents. In arriving at the property settlement agreement covering the assets and liabilities of the parties, negotiated before the divorce and incorporated in the decree, the parties had agreed as follows:

It is understood that Party of the First Part has heretofore filed separate tax returns for the tax years 1979 and 1980. It is agreed that the parties will file a joint tax return for those years and that Second Party will assume and be solely responsible for any and all tax liability over and above that amount which has previously been paid by First Party for those years. It is further understood that no tax returns have been filed for the taxable year 1978 but that certain sums have been paid into the IRS for that year as withholding from First Party's salary. It is agreed that the parties will file a joint tax return for the taxable year 1978 and that the amount of withholding will be First Party's total responsibility for payment of taxes for that year and any tax liability of the parties which exceeds the amount of such with-

holding shall be the sole responsibility and debt of Second Party.

The record indicates that filing joint returns in accordance with the agreement would save Darrel approximately $2,000 in taxes. It would, however, result in a tax bill of approximately $11,000 less the amounts withheld from Vernetta's wages in the relevant years. Vernetta refused to sign the returns after she learned from an IRS agent that regardless of what the divorce decree said, the IRS would hold both signers of a joint return responsible for payment of any tax due on the return. While Darrel was unemployed for most of the time between the divorce and the December 30, 1983, hearing, Vernetta worked forty hours per week throughout that time. There is little doubt that the IRS would have attached her wages for at least a portion of the back taxes if she had signed the joint returns.

In his decision the trial judge, who also presided at the divorce proceedings, determined that the property settlement agreement incorporated into the divorce decree contemplated Vernetta's execution of the joint returns only "upon her being provided with sufficient security that she would not be held liable by IRS for the [Darrel's] tax obligations[.]" Based on this version of the agreement, the trial court found that Vernetta's failure to execute the joint income tax returns was not willful and contumacious.

█ In our opinion, the provision as agreed upon and subsequently adopted in the decree is clear and unambiguous. It simply does not, directly or impliedly, require Darrel to provide security that the IRS would not hold Vernetta liable for the tax. As desirable as such a provision would be for Vernetta, given the advantage of hindsight, neither she nor her attorney sought to incorporate it in the property settlement agreement. The trial court's incorporation of such a provision into the settlement agreement at this point in time is clearly an impermissible amendment of the property division under these circumstances.

█ A divorce decree that divides or allots property is a final and conclusive adjudication and cannot be subsequently modified in the absence of fraud or other reasons that apply to any judgment. *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981); *Holt v. Holt*, 84 S.D. 671, 176 N.W.2d 51 (1970). Trial courts may not modify property divisions in divorce decrees. *Rousseau v. Gesinger*, 330 N.W.2d 522 (S.D.1983). Divorce decree property divisions are designed to finally settle the property rights of the parties as of the time of entry of judgment. *Id.; Lien v. Lien*, 278 N.W.2d 436 (S.D. 1979).

█ This court held in *Hanks v. Hanks*, 334 N.W.2d 856 (S.D.1983), that as a result of SDCL 25-4-44, which gives trial courts the power to equitably divide the property of parties in divorce actions, obligations credited under settlement agreements that become decreed property dispositions are not based on contracts or agreements between the parties; but rather, they are obligations ordered by the court. Trial courts have the power to punish willful or contumacious failure to comply with their authority and to find the uncooperative party in contempt. Four elements are necessary to determine contempt: (1) Existence of an order; (2) knowledge of that order; (3) ability to comply with the order; and (4) willful or contumacious disobedience. *Fuller v. Fuller*, 312 N.W.2d 729 (S.D.1981).

We are of the opinion that the trial court erred in amending the property settlement as adopted in the decree. Since the amended version is basically for denying the allegations of contempt, we reverse that part of the order and remand to give the trial court the opportunity to reconsider the actions of Vernetta in light of the decree as originally drawn.

All the Justices concur.

WUEST, Circuit Judge, acting as a Supreme Court Justice, participating.