STATE of South Dakota, ex rel.
V.K.H., Mother, and M.J.H., a
Minor Child, Plaintiff and Appellant,

v.

S.W., Defendant and Appellee.

No. 16065.

Supreme Court of South Dakota.

Considered on Briefs Oct. 14, 1988.

Decided June 28, 1989.

M.J.H. (son) in a paternity action, initiated in the circuit court for Hutchinson County by V.K.H. (mother). The trial court issued its judgment on July 8, 1986, ordering father to pay, by September 1, 1986, mother's confinement and medical expenses aggregating $1,642. Father was also ordered to pay $1,800 in child support arrearages. Earlier, the trial court established father's monthly child support obligation at $135 in an order dated May 27, 1986. This support amount was repeated in the July 8 judgment.

Father met none of his financial obligations. On March 23, 1987, he submitted a motion to the circuit court seeking reduction of his monthly child support and arrearages in an amount commensurate with his income. Mother, thereupon, filed a motion seeking an increase in monthly child support and dismissal of father's motion. Father was ordered to show cause why he should not (1) be held in contempt for failure to comply with its orders, (2) be required to pay the sums ordered, plus interest, and (3) have his child support payments increased.

## LOWER COURT'S RULING

After two hearings, the circuit court (1) declined to raise or lower father's monthly child support obligation, (2) ordered father to pay his arrearages for confinement expenses, medical expenses, and child support at a rate of $20 per month, and (3) adjudged father in contempt, ordering him to be incarcerated for thirty days. However, father was permitted to purge himself of this contempt by paying his monthly obligations of $135 in child support and $20 for his various arrearages for a six-month period.

## ISSUES/APPELLATE HOLDING

Mother appeals, alleging that the trial court erred in three regards:

(1) Failing to raise or lower father's monthly child support obligation;

(2) Allowing father to pay arrearages at a rate of $20 per month; and

---

Lloyd J. Mahan of Mahan Law Offices, Parkston, for plaintiff and appellant; Keith Goehring of Mahan Law Offices, Parkston, on brief.

Wayne W. Christensen of Beck, Christensen, Gubbrud & Haugland, Worthing, for defendant and appellee.

HENDERSON, Justice.

## PARTIES/PROCEDURAL HISTORY

Defendant/father S.W. (father) was determined by a jury to be the father of

(3) Denying her request for attorney fees.

We affirm the circuit court on issues (1) and (2), but remand to the circuit court for reconsideration of an award of attorney fees. We also award mother $750 for attorney fees on appeal.

## FACTS

Father and mother were never married to each other. Mother gave birth to son on May 26, 1983. Father's paternity was determined by a jury in January 1986. In October 1983, father married a woman who subsequently gave birth to another child.

At the time of adjudication of paternity, father was unemployed, although he had earned a bachelor's degree in commercial economics. In July 1986, the United States Postal Service (USPS) hired father on a part-time basis, guaranteeing him a minimum of 20 hours work per week. He occasionally worked 40 hours per week. Father's USPS payroll records from August 1986 through April 1987 indicate that he worked an average of 26.6 hours per week. He earned an average $1,063 per month, which, after deductions for taxes, insurance and retirement, yielded a monthly take-home pay averaging $951. Although father claimed that his usual monthly pay was much lower, and was inflated due to unusual periods of increased work hours, such fluctuations appear to typify his job. His USPS pay was his sole regular source of income. As he did not earn enough to meet his new family's monthly expenses, his relatives gave him whatever additional money he needed to pay bills. His wife, who does not work, testified on cross-examination that they received interest on $1,300 in insurance proceeds, received as a reimbursement for certain medical costs. These medical costs were initially paid with funds borrowed from relatives. By the time of hearing, these insurance proceeds had been used to pay expenses. Father was further obligated to pay $65 per month for school loans.

Father and his wife own little property. This consists of two old cars, a wrecked motorcycle, and miscellaneous household items, all valued at less than $2,000. After the initial support order, father and his brother sold a boat they owned. Father received about $1,000 from this sale. None of this money, or any other funds, were used to meet father's obligation to support son or to satisfy mother's award for confinement and medical expenses. Only two checks, totalling $35, payable to son, were ever sent. These were signed by father's wife and his father-in-law. The checks were returned by mother's attorney with letters requesting the full amounts of support due. Father attempted to use these letters as an excuse to avoid his responsibilities to mother and son.

## DECISION

### I  *Failure to Increase Child Support*

Mother argues that the trial court abused its discretion by not increasing child support because father's financial situation has improved. She asserts that child support must be raised pursuant to the guidelines of SDCL 25-7-7. We disagree.

Settled case law, predating creation of the guidelines, provides that child support awards must be based on the reasonable financial needs of the child and the financial means of the parents. *Bruning v. Jeffries*, 422 N.W.2d 579, 581 (S.D.1988). The guidelines do not abolish this settled case law. *Bruning, id.* The guidelines are not to be blindly applied. *Id.*

Here, the trial court's findings of fact and conclusions of law addressed the financial situation of both parents, father's school debts, the expenses of father, son, and mother, and father's limited assets. We perceive no abuse of the trial court's discretion on this issue. To avoid grave injustice and inequities, a trial court must adjudicate on the realities of the situation at hand. *State ex rel. Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D.1980).

We note that father's average monthly take-home pay, $951, less his school loan

obligations of $65 per month, yield a net which is below $900. Under the SDCL 25–7–7 guidelines, this would correspond to a child support level between $128 and $144. Father's $135 monthly obligation is within that range. The trial court, however, did not base its decision on such a mechanical rationale. Instead, the court adjudicated on the basis of the financial needs of all concerned. Father's school loan obligations were specifically considered; failure to do so would have, itself, been an abuse of discretion. *Bruning*, at 581.

■ Mother's arguments that father's situation improved, in that he is now employed, and that her situation deteriorated due to a claimed seven percent increase in son's expenses, are unpersuasive. The changes in circumstances did not, on this record, justify modification. As *Bruning* indicated, with citations to *Johansen v. Johansen*, 365 N.W.2d 859 (S.D.1985), and *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984), child support awards must be based on the financial situation of parents and child, guidelines notwithstanding. *See Bruning*, at 581. We affirm the trial court on this issue.

II *Payment of Arrearages in $20 Monthly Installments*

Mother next maintains that the trial court could not, as a matter of law, order father to repay his arrearages in installments of $20 per month, as they are judgments and res judicata. Again, we disagree.

The arrearages in question were $1,642.55 in confinement and medical expenses, $1,800 in unpaid child support accumulated prior to May, 1986, and $135 monthly payments due after May, 1986. Mother argues that these unpaid obligations are unmodifiable under SDCL 25–7–7.3, which provides:

Any past due support payments are not subject to modification by a court or administrative entity of this state, except those accruing in any period in which there is pending a petition for modification of the support obligation, but only from the date that notice of hearing of the petition has been given to the obligee, the obligor, and any other parties having an interest in such matter.

■ Mother also relies on SDCL 25–7–7.-4, which directs that any unpaid support payment, under an order for support, "as defined by § 25–7A–1," is a judgment by operation of law. Both statutory sections were enacted during the 1987 legislative session as Chapters 190 and 191, § 1, respectively. However, SDCL 25–7A–1(13) defines an "order for support" as any order providing for periodic payment of funds for support of a child or maintenance of a spouse. These sections have no application to the payments for accrued child support and confinement and medical expenses which the trial court originally ordered Father to pay in the paternity action, as the unpaid sums were not payments to be made on a periodic basis, per SDCL 25–7A–1(13). The trial court's order regarding unpaid monthly installments is also correct, for different reasons, however.

■ SDCL 25–8–7 provides authority for courts to award a money judgment for, inter alia, child support and pregnancy or confinement expenses in the course of paternity proceedings. Until amended in 1988,* this statute provided, in part:

. . . .

Upon determining paternity of a child, the court shall give judgment declaring the paternity of the father to the child. The court may award a money judgment to the appropriate party for the recovery of the reasonable expenses of the mother's pregnancy and confinement, for the education, support or funeral expenses

---

* The 1988 amendment, in pertinent part, deleted the reference to payments being made "as the court directs" but left the court's authority to "modify or vacate any order issued pursuant to this section" intact.

for the child, or for any other expenses with respect to the child as the court deems reasonable.

The court shall enter an order for the support and custody of the child. The order for support shall be for annual amounts, equal or varying, and the payments shall be made as the court directs.... *The court may modify or vacate any order issued pursuant to this section at any time.* (Emphasis supplied.)

Given the broad authority to "modify or vacate any order" stemming from paternity proceedings, granted in this specific statute, the general provisions of Chapter 25–7 regarding modifiability, which Mother relies upon, simply do not control here. A specific statute, *i.e.*, SDCL 25–8–7, prevails over the general statute. *In re D.H.*, 354 N.W.2d 185, 192 (S.D.1984); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1981).

■ Further, we also do not consider the trial court's $20 per month repayment order to constitute a modification, as no arrearage has, in fact, been forgiven. *See, Uphus v. Uphus*, 221 Mont. 347, 720 P.2d 231 (1986) (Held, 720 P.2d at p. 233: $25 per month payments towards arrearages provision was a mechanism by which ex-husband could purge himself of contempt, and was not a retroactive modification of such arrearages). The trial court, in spreading out father's payment of arrearages, has only recognized the realities of this unfortunate situation. *See State ex rel Larsgaard v. Larsgaard*, 298 N.W.2d 381, 384 (S.D.1980). As indicated in our analysis of mother's first claimed error, father's property and income are inadequate for him to pay the arrearages all at once.[2] We find no legislative mandate for reversal on this issue. SDCL 25–7A–31, which concerns orders for withholding for support, directs that such orders shall di-

rect payors to withhold "[a]n additional amount not less than ten percent of the order for [monthly] support, until payment in full of any delinquency...." Payment of arrearages in small increments is, therefore, consistent with the intent of the legislature. We affirm the trial court on this issue.

## III  *Attorney Fees*

■ Mother's request for attorney fees was denied by the trial court on the grounds that no statutory authority exists for such an award. Mother asserts that SDCL 15–17–7, which authorizes assessment of attorney fees in "determination of paternity," applies in this situation, a contention with which we agree. This proceeding, which pertains to obligations arising from a paternity action, is analogous to proceedings for modification or enforcement of child support arising after divorce, found in *Gross v. Gross*, 355 N.W.2d 4 (S.D.1984), *Jameson v. Jameson*, 90 S.D. 179, 239 N.W.2d 5 (S.D.1976), and a myriad of other cases.

In *Pribbenow v. Van Sambeek*, 418 N.W.2d 626 (S.D.1988), this Court held that an award of attorney fees in a proceeding for a change in custody, after custody was granted in a paternity action, was a matter of the trial court's discretion. Similarly, the present case relates to a paternity action.

■ We remand this case to the trial court for consideration of attorney fees as provided for in *Pribbenow*, 418 N.W.2d at 630:

We have held in the past that the trial court's duties with regards to attorney fees is two-part. First, it must consider what constitutes reasonable attorney fees and, secondly, it must then make a decision of what portion of such fee, if any, should be allowed as costs and paid by the opposing party in the action. This decision is to be based upon the consideration of the property owned by each par-

---

**2.** The $20 per month repayment order is modifiable as financial circumstances change in the future.

ty, the relative income of the parties, whether the property of the parties is in liquid or fixed assets, and whether the actions of either party increased unreasonably the time spent on the case. *Prentice v. Prentice*, 322 N.W.2d 880 (S.D.1982); *Lien v. Lien*, 278 N.W.2d 436 (S.D.1979).

■ Mother also requests appellate attorney fees. She has submitted a separate motion with an itemized and verified schedule of expenses she incurred. This conforms with the requirements enumerated in *Tesch v. Tesch*, 399 N.W.2d 880, 885 (S.D. 1987), and *Malcolm v. Malcolm*, 365 N.W.2d 863, 866 (S.D.1985). Having reviewed the record and assessed the financial situation of both parties, we award her $750 in attorney fees on appeal.

Affirmed in part, reversed in part.

MORGAN, J., concurs.

GILBERTSON, Circuit Judge, concurs with a writing.

SABERS and MILLER, JJ., concur in part and dissent in part.

GILBERTSON, Circuit Judge, sitting for WUEST, C.J., disqualified.

GILBERTSON, Circuit Judge (concurring).

I join in the majority opinion. Standing by itself, however, I cannot argue with the logic of the dissent as to the amount of the monthly payments on the support arrearages as ordered by the trial court.

The judges of this state are parents who have raised or are raising children of their own. Weekly trips to the food store provide a continuing education as to the cost of child rearing without need to resort to expert witnesses or law treatises.

Yet the cost of raising the child is not the sole criteria. As noted by the majority, "to avoid grave injustice and inequities, a trial court must adjudicate on the realities of the situation at hand." *State ex rel. Larsgaard v. Larsgaard* 298 N.W.2d 381, 384 (S.D.1980).

In this case, the father's part-time employment left him with a monthly deficit when compared to his expenses. The balance was made up from hand-outs from relatives. The salary and family charity made possible a meager style of living that few would aspire to join.

The ultimate conclusions of the majority and dissent concerning this issue strikingly illustrate the problem faced by the trial court in this case and routinely faced by the circuit courts of this state in matters of domestic relations and child support. There are simply too few dollars to meet even the most modest standard of living. Judges are not dispensers of manna from heaven. Far too often they are called upon to apportion poverty and its accompanying misery by degree based on the type of determinations that are required in support cases such as this.

In theory, ordering $20 per month repayments on an obligation of $5,737.55 is obviously not the most advantageous alternative to the mother and child. However, higher awards by the trial court would invite claims by the defendant of inability to pay and judicially imposed serfdom. After a review of all factors carefully weighed by the trial court in this case, I cannot say that the court abused its discretion in setting the amount of arrearage payments in the manner in which it did.

The amount of current child support of $135 per month together with the arrearages as set by the trial court are within the ability of the father to meet. If he continues with his previous deplorable record of support, excuses of inability to pay are without merit, and he should be incarcerated as ordered by the trial court.

SABERS, Justice (concurring in part and dissenting in part).

I concur on Issues I and III, and agree with Justice Miller's dissent on Issue II.

MILLER, Justice (concurring in part and dissenting in part).

Although I fully agree with the majority on issues I and III, I respectfully dissent on issue II.

I agree with the majority that the trial court had the authority to "spread out" the arrearage payments on a monthly basis. I suggest, however, that the trial court abused its discretion in fixing the amount required. *Bruning v. Jeffries,* 422 N.W.2d 579 (S.D.1988).

The arrearages amounted to $3,442.55. Additionally, there was delinquent support due from May 1986 to September 1987, at the rate of $135 per month, totalling some $2,295.00. Thus, in order to pay the total arrearages of $5,737.55 (not to mention interest), it would take nearly twenty-four years, and the child will then be age twenty-eight.

Considering all of the facts, I conclude that the trial court erred in not requiring a larger monthly payment. The sum of $20.00 per month equates to less than 67 cents per day! What can you buy a child for that amount, in these times, when milk costs over $2.00 a gallon and bread over $1.00 per loaf?

Father has been neglectful in supporting his child. I believe that the trial court compounds this neglect by allowing him to pay such a miniscule amount.