Rhonda S. JOHNSON, Plaintiff
and Appellee,

v.

Michael D. JOHNSON, Defendant
and Appellant.

No. 16550.

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1989.

Decided Feb. 7, 1990.

John R. Steele of Steele Law Office, Plankinton, for plaintiff and appellee.

John F. Cogley of Morgan, Theeler, Cogley & Padrnos, Mitchell, for defendant and appellant.

WUEST, Chief Justice.

Michael D. Johnson (father) appeals from an order finding him in contempt for failure to pay child support and denying his request for a reduction in child support. We affirm in part, reverse in part, and remand.

## FACTS

Rhonda S. Johnson (mother) and father were divorced in 1985. The trial court granted custody of the parties' three children to mother and ordered father to pay $250 per month in child support for the first three months and $200 per month thereafter.

At the time of the divorce, father was employed as a farm laborer earning about $1,000 per month. In May or June of 1986, father's employer, Leland Glissendorf, filed for bankruptcy and quit paying him a regular wage. Consequently, father began farming on his own. Father presently rents 920 acres and farms an additional 1700 acres for Glissendorf. Although father no longer receives actual wages from Glissendorf, the former employer compensates father by giving him the free use of his farm machinery, buildings, and electricity so that father can raise hogs. Father also has an understanding with Glissendorf that Glissendorf will make one-half of the payments on any machinery purchased by father.

Father failed to make any child support payments from June of 1986 to April of 1988, when he paid $700 to mother. During that time, father kept telling mother that he would make the payments when the crops came in, but he always failed to do so. Therefore, mother filed an application for order to show cause why father should not be held in contempt. After a hearing, the trial court found, inter alia, that father is in arrears for child support in the amount of $4,950, that at various times father had the ability to pay support but did not do so, that father failed to arrange his finances to enable him to make the support payments, and that father's net profit exceeds $1,000 per month on an annualized basis. Based on these findings, the trial court held father in contempt and ruled that the contempt could be purged if father made all current child support pay-

ments and all or a substantial portion of the arrearages. The trial court allowed father to submit a plan showing how current payments and arrearages would be satisfied. The trial court refused to reduce father's child support obligation, but it entered an order staying incarceration pending appeal to this court.

## ISSUE I

DID THE TRIAL COURT ERR IN FINDING THAT FATHER HAD THE ABILITY TO COMPLY WITH THE COURT'S CHILD SUPPORT ORDER?

Father argues that mother failed to show he had the ability to comply with the child support order. In the alternative, father contends that he established his inability to pay child support since he no longer receives a monetary wage from his former employer and because his income tax returns show losses in both 1986 and 1987.

■ The four elements of contempt are: 1) the existence of an order; 2) knowledge of the order; 3) ability to comply with the order; and 4) willful or contumacious disobedience of the order. *Thomerson v. Thomerson*, 387 N.W.2d 509 (S.D.1986); *Hanisch v. Hanisch*, 273 N.W.2d 188 (S.D. 1979). When the defense is inability to pay, the burden shifts to the defendant to establish his inability to comply with the court's order. *Thomerson, supra; Rousseau v. Gesinger*, 330 N.W.2d 522 (S.D. 1983).

■ In the present case, the issue before the court revolves around the third element of contempt: father's ability to comply with the order. If he did not have the ability to pay child support, he cannot be held in contempt. Father correctly points out that his former employer quit paying him a monetary wage in May or June of 1986, which was about the same time that he quit making support payments. It is also true that father's income tax returns show losses in 1986 and 1987. However, the trial court also had the following evidence before it, all tending to show that father had the ability to comply with the child support order: Father is an able-bod-

ied, 36 year old man. Although father no longer receives regular wages, he receives free use of Glissendorf's machinery, buildings, and electricity. At the time of the hearing, father expected a net farm income of $96,000 for the year. During the year prior to the contempt hearing, father was able to make down payments and arrange financing for the purchase of at least $54,-000 worth of farm machinery. Despite this, father did not attempt to borrow any money to pay his child support obligations until one week before the contempt hearing. Finally, father admitted that he had not sought more lucrative employment or even looked for employment outside the White Lake area.

Findings of fact will not be disturbed on appeal unless they are clearly erroneous. SDCL 15-6-52(a). In applying the clearly erroneous standard, this court will overturn the findings only when, after a review of all the evidence, the court is left with a definite and firm conviction that a mistake has been made. *Hilbrands v. Hilbrands*, 429 N.W.2d 750 (S.D.1988). After reviewing the evidence set forth above, we conclude that the trial court's findings regarding father's ability to pay child support are not clearly erroneous; there is ample evidence in the record supporting the third element of contempt.

Furthermore, this court has stated that the question of ability to comply with a child support order is not merely one of the amount of cash which the husband has on hand. Unless a defendant shows he has complied with the court's order "to the fullest extent of his ability," his defense of inability fails. *Nauman v. Nauman*, 320 N.W.2d 519, 521 (S.D.1982); *Bailey v. Bailey*, 77 S.D. 546, 95 N.W.2d 533 (1959). The record reveals that father could have been paying more in child support than he actually has, especially in light of the fact that he has borrowed enough money to buy machinery and manage a substantial farming operation.

## ISSUE II

DID THE TRIAL COURT ERR IN REQUIRING FATHER TO PAY THE FULL

AMOUNT OF PREVIOUSLY ORDERED SUPPORT IN ORDER TO PURGE HIMSELF OF THE CONTEMPT?

Father makes two arguments under Issue II, both of which we reject as being without merit. First, contrary to father's contentions, the trial court did not require him to pay all of the support obligations in order to purge himself of contempt. The trial court ordered father to pay all current support obligations and "all or a substantial portion (the amount of any substantial portion to be approved by this Court) of the child support arrearages." The trial court also allowed father to present a plan to the court showing how current support payments and arrearages would be paid.

Second, father argues that the trial court should be required to enter specific findings as to the amount of support he could have paid and whether or not the failure to comply was substantial in relation to his ability to pay. This court specifically rejected such a requirement in *Bailey, supra.* In the present case, the trial court properly followed our decisions in *Bailey* and *Nauman* in determining whether father had the ability to pay child support.

### ISSUE III

WAS FATHER ENTITLED TO A REDUCTION IN CHILD SUPPORT OBLIGATIONS?

■ The trial court specifically denied father's request for a reduction in his child support obligations. In doing so, the trial court did not set the support in the amount recommended in the guidelines at SDCL 25-7-7, nor did it enter findings justifying a deviation from the guidelines. Father argues that the trial court erred by failing to address the child support guidelines. We agree.

■ Before there may be a deviation from the child support guidelines of SDCL 25-7-7, there must be an entry of specific findings regarding all five factors listed in the statute. *Donohue v. Getman*, 432 N.W.2d 281 (S.D.1988); *Bruning v. Jeffries*, 422 N.W.2d 579 (S.D.1988). However, we note that SDCL 25-7-7, which was in effect when the trial court rendered its decision, was repealed by the 1989 legislature. *See* 1989 S.D.Sess.Laws ch. 220, § 19. The statute was replaced by SDCL 25-7-6.2. Therefore, we remand this case to the trial court to address the child support guidelines in conformity with our decisions in *Donohue* and *Bruning*. Current child support should be based on the new guidelines at SDCL 25-7-6.2; any deviation from those guidelines must be based on the factors listed in SDCL 25-7-6.10.

Affirmed in part, reversed in part, and remanded.

SABERS and MILLER, JJ., concur.

HENDERSON, J., concurs in part and concurs in result in part.

MORGAN, J., disqualified.

HENDERSON, Justice (concurring in part, and concurring in result in part).

I concur on Issues I and II, and concur in result on Issue III. I have strenuously written against the majority opinion in this Court in *Donahue* and *Bruning*. My special writings are referred to for particulars.